**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 18, 2002**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                             No. 115833

ADAM KEITH CORNELL,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

    In the case before us, we must consider two issues: (1) whether the trial court erred in refusing to give the requested misdemeanor lesser included offense instruction of breaking and entering without permission, MCL 750.115, and (2) if the trial court did err, whether the error was harmless. We hold that it was error for the trial court to refuse the requested instruction and that the error was harmless. Therefore, we affirm defendant's convictions.

Defendant Cornell was convicted by a jury in the Roscommon Circuit Court of breaking and entering with the intent to commit larceny, MCL 750.110. He was sentenced, as an habitual offender, to eight to twenty years' imprisonment.

Defendant Cornell's conviction stems from an incident occurring in mid-February, 1996, when a house owned by Thomas Becker was completely destroyed by fire.[1] The fire marshal opined that the fire started in the living room/dining room area of the home and that it was not accidental. Three sets of footprints were found leading away from the home, down the hill. Police followed the prints with a tracking dog and were led to a home about two miles away, where defendant and his cousin Christopher Cornell were present. The owner of the home told police that they should be looking for Cary Prescott. Some time later, the police stopped a vehicle with Prescott, Christopher Cornell, and defendant inside. All three men gave various statements to the police regarding the incident. At defendant's trial, Christopher Cornell and Prescott testified against defendant pursuant to a plea agreement.

---

[1] The house, located in St. Helen, Michigan, was known in the community as the "Heston house" because actor Charleton Heston had spent time there.

Defendant gave two written statements to the police, both of which were admitted into evidence. Defendant gave varying reasons in the statements for visiting the house. In one statement, defendant claimed that Prescott wanted to show him and Christopher Cornell the place where he had outrun a police dog. When they arrived at the house, Prescott began punching out windows and started the house on fire. Defendant stated that neither he nor Christopher Cornell did anything to the house. In another statement, defendant claimed that while the three of them were going for a walk, Prescott told them that there was a house in the woods that "had a lot of stuff in there that they could make a lot of money." He stated that Prescott kicked in the door, but that "there was not anything in the house to take." Prescott began punching out windows and lit some curtains on fire. Defendant denied that he lit anything on fire and stated that he did not want to be there.

Prescott testified that it was Christopher Cornell's idea to go to the house and that they went there to look around and see what was inside the house. He stated that they "hadn't really planned on taking anything. It was empty." However, during cross-examination, Prescott stated that, although he didn't plan on stealing anything, he probably would have and that he thought that perhaps he "could get a little souvenir." Prescott also stated that he tried to set a curtain on fire,

3

but it wouldn't burn. He alleged that defendant and Christopher Cornell started the fire.

Christopher Cornell testified that he, defendant, and Prescott broke into the house to see what they could find and that they were looking for things to steal. However, they did not find anything of value to take. He also stated that Prescott broke windows and set a curtain on fire and that defendant set some mattresses on fire. In one of his written statements, Christopher indicated that Prescott had asked him and defendant if they wanted to "see something wicked" and then had led them to the house.

Defense counsel requested that the jury be instructed on the lesser included misdemeanor of breaking and entering without permission, MCL 750.115. The trial court denied the request, stating:

> The Court would note for the record entering without permission is a misdemeanor. The Court takes note of the record that the defendant asserts and it was his position that there was no intent to commit a larceny and I think that the issue is squarely framed for the jury. Either there was a B and E with intent or the crime did not occur. I would not give the entering without owner's permission instruction under the circumstances of this case.

Defendant appealed, and the Court of Appeals affirmed his conviction.[2] The Court of Appeals rejected defendant's

---

[2] Unpublished opinion per curiam, issued November 2, 1999 (Docket No. 211215).

argument that the trial court erred when it refused to instruct the jury on the lesser included misdemeanor. It reasoned that, in light of the evidence presented regarding defendant's intent to commit larceny, "the jury could not rationally have found that defendant lacked the intent to commit larceny when he entered the house." Slip op at 3. Because the requested instruction was not supported by a rational view of the evidence, the Court of Appeals found that the trial court did not abuse its discretion in refusing to give the instruction.

One judge dissented with respect to the instructional issue. The dissent opined that there was evidence to support defendant's theory that he lacked the intent to commit a larceny. The dissenting judge explained:

> Not only was there evidence supporting defendant's theory that he had no intent to commit larceny, but also the only disputed factual element was whether defendant had an intent to commit larceny, which is an element not included in the lesser misdemeanor offense. In other words, the lesser misdemeanor instruction was proper in this case because the greater offense required the jury to find that the disputed factual element, whether defendant had the intent to commit larceny, existed and this element is not required for a conviction of breaking and entering without permission. Therefore, the trial court abused its discretion in denying defendant's requested instruction of the lesser misdemeanor offense of breaking and entering without permission. [Slip op at 2 (citation omitted).]

5

The dissent also noted that the requested instruction would not have resulted in undue confusion or some other injustice.

Defendant sought leave to appeal from this Court. This Court granted leave to appeal in this case and in *People v Silver*, 466 Mich ___; ___ NW2d ___ (2002), ordering that the two cases be argued and submitted together.[3]

II

Although much of our more recent case law has disregarded it, resolution of the first issue presented in this case is governed by MCL 768.32(1), which provides:

> Except as provided in subsection (2), upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

MCL 768.29 requires the court to "instruct the jury as to the

___

[3] 463 Mich 958-959 (2001). The grant order limited the appeal to the following issues:

> [W]hether (1) the trial court erred in refusing to give the requested misdemeanor lesser included offense instruction, and (2) if so, whether the error was harmless. In addressing the harmless error issue, the parties shall discuss the applicability of *People v Richardson,* 409 Mich 126 (1980), *People v Beach,* 429 Mich 450 (1988), *People v Mosko,* 441 Mich 496 (1992), *People v Lukity,* 460 Mich 484 (1999), *People v Snyder,* 462 Mich 38 (2000), and *People v Elston,* 462 Mich 751 (2000).

law applicable to the case" and indicates that "[t]he failure of the court to instruct the jury on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

A version of MCL 768.32 has been in existence since 1846. 1846 CL 5,952 provided:

> "[U]pon an indictment for any offense, consisting of different degrees, as prescribed in this title, the jury may find the accused not guilty of the offense in the degree charged in the indictment, and may find such accused person guilty of any degree of such offense, inferior to that charged in the indictment, or of an attempt to commit such offense." [*Hanna v People,* 19 Mich 316, 320-321 (1869).]

In *Hanna,* the defendant was charged with assault with intent to kill. An issue before the Court was whether the trial court erred in instructing the jury that if it did not find the defendant guilty of the offense charged in the information, it might find the defendant guilty of simple assault and battery, which was a misdemeanor. In addressing the issue, this Court first discussed the general common-law rule, stating:

> The general rule at common law was, that when an indictment charged an offense which included within it another less offense or one of a lower degree, the defendant, though acquitted of the higher offense, might be convicted of the less.
>
> This rule, however, was subject to the qualification, that upon an indictment for a felony, the defendant could not be convicted of a misdemeanor. [*Id.,* 318.]

7

After explaining that the bases for the misdemeanor qualification had ceased to exist, the Court construed the 1846 version of the statute because it believed that the statute governed the case before it. The Court's analysis of the statute is enlightening. In construing the statute, Justice Christiancy, writing for the Court, stated:

> I do not think this provision was intended to be restricted in its application to offenses divided by the statutes contained in this title (which included all the provisions in reference to crimes), into classes expressly designated by the name of "degrees." Thus confined, it would apply, so far as I have been able to discover, only to the single case of an indictment for murder in the first degree, and would not even include manslaughter as a lower degree of the offense, but only murder in the second degree; since murder is the only offense divided by the statute into classes expressly designated as "degrees." Beside, if thus restricted to the crime of murder, it can apply only to that very class of cases in which it was not needed, either as declaratory of, or as amending the common law; since, without the provision, the common law by the narrowest application ever adopted, had already fully provided for the case; as no one can doubt that without this provision, the common law rule would, under the statute, dividing murder into degrees, have authorized a conviction not only for murder in the second degree, but for manslaughter also, under an indictment for murder in the first degree, all these offenses being felonies included in the charge. But, if this is not clear enough in itself, the statute has put this view in the clearest possible light; by expressly providing in the next section (Sec 3, Ch 153, Rev Stat of 1846), after dividing murder into degrees, for a conviction of murder in the second degree upon a charge of murder in the first, though it is silent as to a verdict of manslaughter in such a case. If, therefore, section sixteen of chapter 161, above quoted at length, is not to be applied to any

8

offenses not divided into degrees *eo nomine,* then it can have no application or effect whatever, and must have been inserted in the statute for no purpose or object. Such a construction is inadmissible, if the provision will admit of any other.

Whatever may have been the proper construction of this provision under the Revised Statutes of New York, where it is preceded by very different provisions, it must, I think, in the connection in which it is found in our revision, be construed as extending to all cases in which the statute has substantially, or in effect, recognized and provided for the punishment of offenses of different grades, or degrees of enormity, wherever the charge for the higher grade includes a charge for the less. In this view only, can any effect be given to it, as declaratory of, or altering the common law.[4] [*Id.,* 321-322.]

The Court further noted that the circuit courts had consistently construed the statute as removing the misdemeanor restriction of the common-law rule and authorizing a conviction "for any substantive offense included in the offense charged, without reference to the fact that one was a felony and the other a misdemeanor . . . ." *Id.,* 323.

On the basis of its analysis of the statute, the Court concluded that because the assault statute provided for "assaults of various kinds and degrees of enormity, depending upon the intent with which, and the circumstances under which

---

[4] In 1861, this Court explained, "It is a general rule of criminal law, that a jury may acquit of the principal charge, and find the prisoner guilty of an offense of lesser grade, if contained within it." *People v McDonald,* 9 Mich 150, 153 (1861).

9

the assault may have been made," an indictment for any of the higher grades of assault must include the inferior degree of simple assault, and the defendant could be convicted of the included offense. *Id.*, 322-323. The Court rejected the defendant's argument that he could not be prosecuted by information because he had never been examined on a charge of a misdemeanor; because the misdemeanor was included in the charge of the felony, an examination upon the higher offense was an examination upon the lesser offense included within it.

Beginning with a series of cases released in 1975, this Court's analysis moved away from MCL 768.32 and the construction that the statute had been given by the *Hanna* Court. The two most noteworthy cases in this series are *People v Jones,* 395 Mich 379; 236 NW2d 461 (1975), and *People v Chamblis*, 395 Mich 408; 236 NW2d 473 (1975).

In *Jones,* the defendant, upon retrial, was charged with second-degree murder and convicted of that offense. The trial court instructed the jury on second-degree murder and voluntary manslaughter. However, the trial court refused defense counsel's request that the jury be instructed on the statutory offense of killing or injuring a person by careless, reckless, or negligent discharge of a firearm.

In analyzing whether this was a lesser included offense on which the jury should have been instructed, this Court

10

first opined that the law of lesser included offenses in Michigan had not been clear or consistent. It noted that the common law had defined lesser included offense to mean necessarily included lesser offenses—that is, the lesser offense "must be such that it is impossible to commit the greater without first having committed the lesser." *Id.,* 387. However, it then explained, without citation of any Michigan authority, that this definition was conceded to be "unduly restrictive" and that most jurisdictions, including Michigan, "have statutes that are broadly construed to permit conviction of 'cognate' or allied offenses of the same nature under a sufficient charge." *Id.* This Court explained that these "lesser offenses are related and hence 'cognate' in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense." *Id.*

Further, applying this analysis to the case before it, the *Jones* Court concluded that reckless discharge of a firearm causing death may be a lesser included offense of second-degree murder. Examination of the two offenses demonstrated "the overlapping of certain elements and common statutory purpose." *Id.,* 389. Thus, the two offenses were cognate. The Court then reasoned that while, in the case of a necessarily included lesser offense, the evidence would always

11

support the lesser if it supports the greater, in the case of a cognate lesser offense, the evidence "must be examined to determine whether that evidence would support a conviction of the lesser offense." *Id.*, 390. Because the evidence would have supported a guilty verdict on the offense of careless, reckless, or negligent discharge of a firearm causing death, the Court concluded that the trial court should have given the requested instruction.

Justice Coleman dissented from the majority opinion in *Jones* because she disagreed with the theory of lesser included offenses adopted by the majority. She explained that it would blur the lines of responsibility in the criminal justice process, reasoning:

> The "cognate," "related," or "allied" lesser offense (it is not in reality "included") theory as here presented conjures up visions of increased rather than diminished confusion.
>
> It invites appeals because of its formlessness. It blurs the roles of prosecutor, judge and defense counsel. If not contrary to our statutes, it adds a new act or section to the existing legislation.
>
> It threatens due process as to defendant and fundamental fairness as to the people in the preparation and presentation of the case.
>
> Unless the tendencies of past history are altered, we can anticipate in some cases a result the opposite of that desired by my colleagues. Considering the number of offenses by our definition "related" or "allied" to this or other

> major crimes, juries presented with foreseeable smorgasbords of possibilities conceivably will return unjustifiable verdicts of guilty.
>
> In my opinion, the theory adopted today neither promotes the efficient and careful operation of the criminal justice system nor is likely to result in a fairer trial for the defendant. [*Id.,* 406.]

In explaining the reasons for her disagreement with the majority's theory, Justice Coleman noted that the decision to charge a person with a crime was the prosecutor's responsibility and that the Court had held that courts may not interfere with that process. She explained that after the crime was charged and a trial held, MCL 768.32 permits the jury to consider other offenses. However, the statute did not leave the jury free to convict for any felony or misdemeanor; only degrees or an attempt of the offense charged could be considered. Thus, as Justice Coleman construed the statute, MCL 768.32 only permits consideration of necessarily included lesser offenses. Further, which necessarily included lesser offenses warrant jury instructions should be determined in reference to the offense charged and the evidence presented. Analyzing the case before the Court, Justice Coleman concluded that the offense of careless, reckless, or negligent discharge of firearms was not a degree of murder within the meaning of MCL 768.32.

13

In *Chamblis*, an opinion that was decided the same day as *Jones,* the defendant was charged with armed robbery. "Over defense counsel's objection, the jury was instructed on the lesser included offenses of unarmed robbery and larceny from the person." *Chamblis*, *supra* at 413-414. The jury convicted the defendant of the larceny offense. On appeal, the defendant challenged the trial court's decision to give the lesser included offense instructions. The Court first noted that unarmed robbery was a necessarily included lesser offense of armed robbery. Therefore, if there was evidence to allow the case to go to the jury on the armed robbery charge, there necessarily was evidence to support a charge of unarmed robbery. The Court then considered the larceny offense. The Court appeared to conclude that larceny from a person was a necessarily included lesser offense of robbery. However, it also considered whether the larceny offense was supported by the evidence adduced at trial, concluding that it was.

The *Chamblis* Court then discussed the problem of compromise verdicts and reinstated the common-law restriction on misdemeanor offenses. Recognizing the position taken by the *Hanna* Court, the *Chamblis* Court stated:

> While the technical reasons that existed for the common law rule have disappeared, we see strong policy reasons which still support that common law qualification on the doctrine of conviction of lesser included offenses. "There would be a great difference between a conviction for manslaughter

14

under an indictment for second degree murder, and a conviction for disturbing the peace under the same charge. Does not the policy against harassment and a continual siege of accusations and charges seem to have some application?" Comment, 57 Nw U L R 62, 73 (1962). We answer in the affirmative.

We are convinced that the cause of justice is not well served by convicting of assault and battery a defendant charged with murder. As a matter of policy people who commit serious crimes should be punished for those offenses, and those who did not commit such serious crimes should not be tried for those crimes only to be found guilty of a much lower offense. In the example cited, if the most serious offense for which a jury feels conviction is justified is assault and battery, the original charge of murder appears to bear no realistic relationship to the offense committed, and no good purpose would be served by allowing such instruction.

\* \* \*

We are establishing a rule today, as a matter of policy, limiting the extent of compromise allowable to a jury in deciding whether to convict of a lesser included offense. In any case wherein the charged offense is punishable by incarceration for more than two years, the court, whether or not requested, may not instruct on the lesser included offenses for which the maximum allowable incarceration period is one year or less. [*Id.,* 428-429.][5]

Justice Lindemer dissented. In discussing MCL 768.32 and MCL 768.29, he stated:

As has been demonstrated, the informed choice of defense counsel to restrict attention to the principal charge has not been foreclosed by the

---

[5] *People v Cazal,* 412 Mich 680, 683; 316 NW2d 705 (1982), limited the *Chamblis* misdemeanor cutoff rule to jury trials. In contrast, we hold in the present case that MCL 768.32(1) applies in both bench and jury trials.

15

> majority's cases; neither is it prohibited by statute. [MCL 768.32] simply speaks to the possibility that the jury may find the accused not guilty of an offense in the degree charged in the indictment while still allowing a guilty verdict of any inferior degree of such offense. It does not speak to instructions on lesser included offenses. [MCL 768.29] says that the court shall instruct the jury as to the law applicable to the case, but does not mandate what law is applicable to the case. [*Id.,* 433.]

Justice Lindemer also disagreed with the majority's "discussion of instructions on lesser included cognate offenses," its "rule cutting off lesser included offense instructions for which the maximum allowable incarceration period is one year or less when the charged offense is punishable by incarceration for more than two years, and to the policy limitation on the extent of compromise allowable." *Id.*

Justice Coleman concurred in part and dissented in part. She concurred in the reinstatement of the defendant's convictions and agreed that unarmed robbery was a necessarily included lesser offense of armed robbery. However, she reluctantly agreed with Justice Lindemer's analysis of the majority opinion concerning the cutting off of included offense instructions according to penalty, stating:

> I agree with him because I believe him to be right. The reluctance is born of the foreseeably lengthened "laundry list" of offenses and jurors who would be required to absorb possibly dozens of

16

pages of instructions regarding the many offenses possible under the "cognate", "related" or "allied" offense theory of *Jones*. [*Id.,* 431.]

In *People v Stephens,* 416 Mich 252, 255; 330 NW2d 675 (1982), this Court overruled the misdemeanor cutoff rule articulated in *Chamblis*, holding:

> [T]he policies behind the *Chamblis* rule would be better served by a more flexible approach to lesser included offense instructions on misdemeanors. Whenever an adequate request for an appropriate instruction is supported by a rational view of the evidence adduced at trial, the trial judge shall give the requested instruction unless to do so would result in a violation of due process, undue confusion, or some other injustice.

The situation in *Stephens* is remarkably similar to that presented in the case before us. The defendant was charged with breaking and entering with intent to commit a felony or larceny. The defendant did not dispute the allegation of breaking and entering a doctor's office. The defendant's theory was that he lacked the requisite intent to commit larceny. Defense counsel requested that the jury be instructed on the lesser included misdemeanor of entering without permission. The trial judge felt compelled by *Chamblis* to deny the request.

The *Stephens* Court reasoned that the possibility of a compromised verdict did not justify an arbitrary limitation according the maximum term of confinement. It noted that from the defendant's point of view, an instruction on a lesser

included misdemeanor offense might further a just result by precluding a felony conviction unsupported by the jury's belief of guilt beyond a reasonable doubt. While the goal of avoiding jury confusion was an important one, the Court believed that the restrictions it imposed on misdemeanor instructions would alleviate this problem by limiting the number of such lesser included offense instructions. Moreover, its requirement that all lesser included offense instructions be rationally supported by the evidence would help to alleviate juror confusion by also limiting the number of instructions given. *Id.,* 260.

The Court articulated a five-part test for determining when lesser included misdemeanor instructions should be given. This test was derived from *United States v Whitaker,* 144 US App DC 344; 447 F2d 314 (1971). First, there must be a proper request for the instruction. *Stephens, supra* at 261. Second, "there must be an appropriate relationship between the charged offense and the requested misdemeanor." *Id.,* 262. In other words, the Court explained, there must be an inherent relationship between the greater and lesser offense:

> "[T]hey must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." [*Id.,*

18

quoting *Whitaker*, *supra* at 319.][6]

Third, the requested misdemeanor must be supported by a rational view of the evidence adduced at trial. Not only must there be some evidence that would support a conviction on the lesser offense, but

> "proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." [*Id.*, 263., quoting *Whitaker, supra* at 317.]

Stated another way,

> "[a] lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." [*Id.* (citations omitted).]

In discussing this element, the Court expressly refused to extend the rule of *Jones*. *Id.*, 264. Fourth, if the prosecutor requests the instruction, the defendant must have adequate notice of it as one of the charges against which he

---

[6] This Court further clarified the second element in *People v Steele,* 429 Mich 13, 19; 412 NW2d 206 (1987), stating:

> The second condition requires that an "appropriate relationship" exist between the charged offense and the requested misdemeanor. This "appropriate" or "inherent" relationship has a two-part inquiry. First, the greater and lesser offenses must both relate to the protection of the same interests. Second, they must be related in an evidentiary manner, so that, generally, proof of the misdemeanor is necessarily presented as part of the proof of the greater charged offense.

19

must defend. *Id*. Fifth, the requested instructions must not cause undue confusion or some other injustice. *Id*. The Court also noted that a trial court's decision to grant or deny a requested lesser included misdemeanor instruction would only be reversed upon a finding of an abuse of discretion. *Id.,* 265.

As the preceding discussion illustrates, many of our more recent decisions concerning lesser included offenses have disregarded the statute and much of the older case law. Having done so, we now must decide how to reconcile these divergent approaches to lesser included offense instructions. As this Court has recognized, matters of substantive law are left to the Legislature. *People v Glass (After Remand),* 464 Mich 266, 281; 627 NW2d 261 (2001); *McDougall v Schanz,* 461 Mich 15, 27; 597 NW2d 148 (1999). Determining what charges a jury may consider does not concern merely the "judicial dispatch of litigation." *Id.,* 30. Rather, the statute concerns a matter of substantive law. As this Court has noted,

> [t]he measure of control exercised in connection with the prevention and detection of crime and prosecution and punishment of criminals is set forth in the statutes of the State pertaining thereto, particularly the penal code and the code of criminal procedure. The powers of the courts with reference to such matters are derived from the statutes. [*People v Piasecki,* 333 Mich 122, 143; 52 NW2d 626 (1952).]

20

Therefore, in our opinion, it is necessary to return to the statute and the construction it was given by the *Hanna* Court and by Justice Coleman in her dissent in *Jones*.

In pertinent part, the statute provides that the jury "may find the accused person guilty of a degree of that offense inferior to that charged in the indictment." MCL 768.32(1). As the *Hanna* Court explained, the provision was not intended to be limited only to those expressly divided into "degrees," but was intended to extend to all cases in which different grades of offenses or degrees of enormity had been recognized. Moreover the statute removed the common-law misdemeanor restriction. Thus, application of the statute is neither limited to those crimes expressly divided into degrees nor to lesser included felonies.

Moreover, Justice Coleman opined that MCL 768.32 only permitted consideration of necessarily included lesser offenses, not cognate lesser offenses. The language of the statute supports this conclusion. The statute permits the jury to convict a defendant of a degree of "*that offense inferior to that charged* in the indictment." The language of the statute only permits consideration of a degree of those offenses that are inferior to the greater offense charged.[7]

---

[7] We note that MCL 768.32(1), which is quoted in its entirety on page 11, also permits instruction on an attempt to (continued...)

21

In *People v Torres (On Remand),* 222 Mich App 411; 564 NW2d 149 (1997), the Court of Appeals considered the meaning of the word "inferior," as used in MCL 768.32. The Court stated:

> [W]e conclude that under MCL 768.32(1), an offense may be inferior to another even if the penalties for both offenses are identical. We believe that the word "inferior" in the statute does not refer to inferiority in the penalty associated with the offense, but, rather, to the absence of an element that distinguishes the charged offense from the lesser offense. The controlling factor is whether the lesser offense can be proved by the same facts that are used to establish the charged offense. As the *Membres* Court[8] noted, the defendant's due process notice rights are not violated because all the elements of the lesser offense have already been alleged by charging the defendant with the greater offense. [*Id.,* 419-420.]

This would foreclose consideration of cognate lesser offenses, which are only "related" or of the same "class or category" as the greater offense and may contain some elements not found in the greater offense.

Justice Coleman further explained that in determining whether a necessarily included lesser offense instruction or an attempt instruction should be given, one must also consider whether the evidence presented supported such an instruction. Before the *Jones* and *Chamblis* decisions, this had been a

---

[7](...continued)
commit such offense. However, that aspect of the statute is not at issue in the present cases.

[8] *People v Membres,* 34 Mich App 224; 191 NW2d 66 (1971).

22

consideration.  For example, in *People v Repke*, 103 Mich 459, 470-471; 61 NW 861 (1895), the Court concluded that it was proper for the trial court to instruct the jury that it must find the defendant guilty of first-degree murder or acquit him because there was "no evidence warranting a different direction, and no circumstances which would lessen the degree."  In *People v Onesto,* 203 Mich 490, 496; 170 NW 38 (1918), the Court held that "[u]nless the proofs showed that the jury would have been justified in convicting [codefendant] Damico of an offense of lesser grade, there was no occasion for the court to instruct them in regard to it."  In *People v Patskan,* 387 Mich 701, 713; 199 NW2d 458 (1972), the Court concluded that "the trial court would not have committed error in refusing to give instructions on attempted assault with intent to rob being armed."  Quoting from Gillespie's Michigan Criminal Law & Procedure, the Court noted that "it is not error to omit an instruction on such lesser offenses, where the evidence tends only to prove the greater . . . ."  *Id.,* 711.  See also, *People v Netzel,* 295 Mich 353; 294 NW 708 (1940); *People v Kolodzieski*, 237 Mich 654; 212 NW 958 (1927).

Additionally, *Sansone v United States,* 380 US 343; 85 S Ct 1004; 13 L Ed 2d 882 (1965), is instructive on this point. Similar to MCL 768.32, Rule 31(c) of the Federal Rules of Criminal Procedure provides that a "defendant may be found

guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense." [9] In explaining when instructions should be given under the rule, the *Sansone* Court stated:

> Thus, "(i)n a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifie(s) it . . . (is) entitled to an instruction which would permit a finding of guilt of the lesser offense." But a lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and the greater offenses. In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater. A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for a conviction of the lesser-included offense. [*Id.,* 349-350 (citations omitted).][10]

---

[9] While MCL 768.32 does not use the same phrasing as F R Crim P 31(c), which refers to "an offense necessarily included in the offense charged," as we have already explained, the wording of MCL 768.32 also limits consideration of lesser offenses to necessarily included lesser offenses.

[10] This analysis is consistent with *Sparf v United States,* 156 US 51, 63-64; 15 S Ct 273; 39 L Ed 343 (1895), in which the Court stated:

> The court below assumed, and correctly, that section 1035 of the Revised Statutes did not authorize a jury in a criminal case to find the defendant guilty of a less offense than the one charged, unless the evidence justified them in so doing. Congress did not intend to invest juries in criminal cases with power to arbitrarily disregard the evidence and the principles of law applicable
>
> (continued...)

24

We believe that this analysis is consistent with our prior case law and equally applicable to MCL 768.32. Therefore, we hold that a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it.[11] To permit otherwise would be

---

[10](...continued)
to the case on trial. The only object of that section was to enable the jury, in case the defendant was not shown to be guilty of the particular crime charged, and if the evidence permitted them to do so, to find him guilty of a lesser offense necessarily included in the one charged, or of the offense of attempting to commit the one charged. Upon a careful scrutiny of the evidence, we cannot find any ground whatever upon which the jury could properly have reached the conclusion that the defendant Hanson was only guilty of an offense included in the one charged, or of a mere attempt to commit the offense charged.

[11] Justice Ryan's dissent in *People v* Kamin, 405 Mich 482; 275 NW2d 777 (1979), demonstrates this principle in action. In *People v Cargill*, one of the companion cases to *Kamin,* the defendant was charged with armed robbery. Defense counsel requested that the jury be instructed on unarmed robbery, among other lesser included offenses. The undisputed evidence established that the men who robbed the store were armed with a sawed-off shotgun and that they took the money with force or threat of violence. The defendant's defense was alibi. The only question that the jury was required to resolve was whether defendant was one of the men present when the crime was committed. It was not required to resolve a dispute about whether the men were armed. Thus, the factual issue was the same with respect to both the lesser and greater offenses, and there was "no evidence which would justify the jury in concluding that the greater offense was not committed and the lesser included offenses were committed." *Id.,* 516.
(continued...)

25

inconsistent with the truth-seeking function of a trial, as expressed in MCL 768.29.[12] To the extent that our prior decisions, including *Jones, Chamblis, Stephens,* and *People v Jenkins*, 395 Mich 440; 236 NW2d 503 (1975)[13] and their progeny conflict with our holding today, they are overruled.[14]

---

[11](...continued)
Therefore, Justice Ryan would have affirmed the defendant's conviction.

[12] MCL 768.29 states in pertinent part, "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, *with a view to the expeditious and effective ascertainment of the truth regarding the matters involved."* (Emphasis added.)

[13] *Jenkins* held that in a case involving a charge of first-degree murder, the trial court is always required to instruct the jury on the necessarily lesser-included offense of second-degree murder, even where such an instruction is not requested or is objected to. In light of our holding that a requested instruction on a necessarily included offense must be supported by the evidence, an instruction on second-degree murder, as a necessarily included lesser included offense of first-degree murder, is not automatically required. Rather, such an instruction will be proper if the intent element differentiating the two offenses is disputed and the evidence would support a conviction of second-degree murder. However, given that in many cases involving first-degree murder, the intent element is disputed, we suspect that more often than not, an instruction on second-degree murder will be proper.

[14] The doctrine of stare decisis, which furthers the interests of stability and continuity in the judicial process, does not tie us to the decisions in *Jones, Chamblis, Stevens,* and *Jenkins*. Stare decisis should not be invoked to prevent the Court from overruling wrongly decided cases or erroneous decisions determining the meaning of statutes. See *Robinson v Detroit,* 462 Mich 439, 463-468; 613 NW2d 307 (2000). The decisions we overrule today blatantly disregarded MCL 768.32 as well as previous case law. The interests in the
(continued...)

26

The dissent claims that MCL 768.32(1) is consistent with the *Stephens* test and that we have merely adopted a "watered-down" version of the *Stephens* test. We respectfully disagree. A proper interpretation of MCL 768.32(1) renders some elements of the *Stephens* test irrelevant and unnecessary. First, the concern regarding notice to a defendant is irrelevant because the principal charge contains all the elements of the necessarily lesser included offense; thus defendant is already on notice. Second, the concern regarding jury confusion is minimized to the extent that MCL 768.32(1) precludes cognate lesser misdemeanors and only permits necessarily included lesser misdemeanors if supported by a rational view of the evidence. Additionally, an "inherent relationship" between the charged offense and the requested misdemeanor is not a concern because MCL 768.32(1) does not permit cognate lesser instructions.

Having clarified the proper analysis for determining when a lesser included instruction must be given, we now turn to

---

[14](...continued)
"evenhanded, predictable, consistent development of legal principles" and the "integrity of the judicial process" require that we rectify the conflict our case law has created. [*Id.*, 463.] The dissent is mistaken in claiming that we have not even given "lip-service" to the principle of stare decisis. Slip op at 12. To the contrary, we have considered it and find that overruling the previous cases of this Court that ignored a statute to be warranted.

the case before us.[15]

Defendant Cornell was charged with breaking and entering with intent to commit larceny.    MCL 750.110 provides:

> A person who breaks and enters, with intent to commit a felony or a larceny therein, a tent, hotel, office, store, shop, warehouse, barn,

---

[15] We note that the rules regarding lesser included offenses are different when a defendant is charged with a major controlled substance offense.  MCL 768.32(2) states:

> Upon an indictment for an offense specified in section 7401(2)(a)(i) or (ii) or section 7403(2)(a)(i) or (ii) of the public health code, Act No. 368 of the Public Acts of 1978, being sections 333.7401 and 333.7403 of the Michigan Compiled Laws, or conspiracy to commit 1 or more of these offenses, the jury, or judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment *but may find the accused guilty of a degree of that offense inferior to that charged in the indictment only if the lesser included offense is a major controlled substance offense. A jury shall not be instructed as to other lesser included offenses involving the same controlled substance nor as to an attempt to commit either a major controlled substance offense or a lesser included offense involving the same controlled substance.* The jury shall be instructed to return a verdict of not guilty of an offense involving the controlled substance at issue if it finds that the evidence does not establish the defendant's guilt as to the commission of a major controlled substance offense involving that controlled substance. A judge in a trial without a jury shall find the defendant not guilty of an offense involving the controlled substance at issue if the judge finds that the evidence does not establish the defendant's guilt as to the commission of a major controlled substance offense involving that controlled substance. [Emphasis added.]

28

granary, factory or other building, structure, boat, ship, or railroad car is guilty of a felony, punishable by imprisonment for not more than 10 years.

Defendant Cornell requested that the jury also be instructed on the offense of breaking and entering without permission. MCL 750.115(1) provides in pertinent part:

Any person who breaks and enters or enters without breaking, any dwelling, house, tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, boat, ship, railroad car or structure used or kept for public or private use, or any private apartment therein, or any cottage, clubhouse, boat house, hunting or fishing lodge, garage or the out-buildings belonging thereto, any ice shanty with a value of $100.00 or more, or any other structure whether occupied or unoccupied, without first obtaining permission to enter from the owner or occupant, agent, or person having immediate control thereof, is guilty of a misdemeanor.

We hold that breaking and entering without permission is a necessarily included lesser offense of breaking and entering with the intent to commit a felony. The elements of breaking and entering with intent to commit larceny are: (1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein. *People v Toole,* 227 Mich App 656, 658; 576 NW2d 441 (1998). Breaking and entering without permission requires (1) breaking and entering or (2)entering the building (3) without the owner's permission. It is impossible to commit the greater offense

without first committing the lesser offense.

Moreover, a conviction of the greater offense requires the jury to find a disputed factual element—the intent to commit larceny—which is not part of the lesser offense. The evidence presented at trial offered conflicting reasons about why defendant, Prescott, and Christopher Cornell went to the home and whether they intended to steal anything. There was testimony that Prescott wanted to show Christopher and defendant where he had outrun a police dog or that he wanted to show them "a wicked place." There was also testimony that the three just went there to look around. Finally, there was testimony that the three went to the house hoping to find things of value to steal. Thus, intent to commit larceny—the factual element differentiating the greater offense from the lesser offense—was in dispute. Because there was evidence to support a finding that defendant lacked the intent to commit larceny, the trial court erred in refusing to give the requested misdemeanor lesser offense instruction of breaking and entering without permission.

### III

This Court has made it clear that harmless error analysis is applicable to instructional errors involving necessarily included lesser offenses:

> Properly understood, the doctrine of harmless error is perfectly consonant with the purpose and

30

function of an appellate court. Our constitutional mission, as the highest branch of the one court of justice, is to correct errors that have deprived a litigant of a fair trial or have otherwise interfered significantly with the trial's search for truth and a just verdict. With few exceptions, the judgment of a trial court may not be set aside on the ground of error unless there is a determination that the error was not harmless. We see no reason to exclude from this rule errors involving a failure to provide a requested instruction on a necessarily included offense. [*People v Mosko,* 441 Mich 496, 503; 495 NW2d 534 (1992).]

Therefore, having concluded that the trial court erred in refusing to give the requested instruction, we now must consider whether the error was harmless.

MCL 769.26 provides:

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of *misdirection of the jury*, or the improper admission or rejection of evidence, or for any error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of resulted in a miscarriage of justice. [Emphasis added.]

Further, MCR 2.613(A) states:

Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

Application of these provisions, as developed in this Court's

31

harmless error jurisprudence, requires error to be classified as constitutional or nonconstitutional and as preserved or unpreserved. If the error is constitutional, it must be further classified as structural or nonstructural. *People v Carines,* 460 Mich 750; 597 NW2d 130 (1999); *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999).[16]

We are satisfied that the present case concerns nonconstitutional error that has been preserved by defendant's request for the lesser included misdemeanor instruction.[17] A preserved, nonconstitutional error is not a

_____

[16] Constitutional errors that are structural in nature are subject to automatic reversal. *People v Anderson (After Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994). If a case involves nonstructural, preserved constitutional error, an appellate court should reverse unless the prosecution can show that the error was harmless beyond a reasonable doubt. *Carines, supra* at 774. If the constitutional error is not preserved, it is reviewed for plain error. *Id.*

In cases involving preserved, nonconstitutional errors, the defendant must establish that it is more probable than not that the error undermined reliability in the verdict. *Id.; Lukity, supra* at 495. Unpreserved, nonconstitutional errors are reviewed for plain error. *Carines, supra* at 774.

[17] One Sixth Circuit case has characterized the failure to instruct on a lesser included offense as "intrinsically harmful structural error" requiring reversal. *United States v Monger*, 185 F3d 574, 578 (CA 6, 1999). Further, some older Michigan case law has suggested that the failure to instruct is automatically error requiring reversal. See, e.g., *People v Van Smith,* 388 Mich 457, 461-462; 203 NW2d 94 (1972). However, we disagree with these assessments.

Structural error is a concept that has typically been applied to errors of constitutional magnitude, not to
(continued...)

ground for reversal, "unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Id.,* 495-496. Stated another way, the analysis focuses on whether the error undermined reliability in the verdict. *Id.,* 495; see also *People v Elston,* 462 Mich 751, 766; 614 NW2d 595 (2000); *People v Snyder*, 462 Mich 38, 45; 609 NW2d 831 (2000). Therefore, to prevail, defendant must demonstrate that it is more probable than not that the failure to give the requested lesser included misdemeanor instruction undermined reliability

---

[17](...continued)
statutory errors as in this case. See, e.g., *People v Breverman,* 19 Cal 4th 142, 165; 77 Cal Rptr 2d 870; 960 P2d 1094 (1998) (holding that "the failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility") and *Neder v United States,* 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999).

In *Neder,* the Court determined that the failure to instruct the jury on an element of the offense for which the defendant was convicted, was not a "structural" error subject to automatic reversal. The Court opined that the error differed from the limited class of cases in which it had found structural error, stating,

> Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. [*Id.,* 9.]

33

in the verdict.  *Carines, supra* at 774; *Lukity, supra* at 495.[18]

 *People v Rodriguez*, 463 Mich 466; 620 NW2d 13 (2000) provides further guidance concerning how these principles are applied in cases involving instructional errors.  In *Rodriguez*, the defendant was convicted of evading the use tax. The trial court refused to instruct the jury regarding a statutory exemption to the use tax, finding the provision inapplicable to the defendant.  *Id.,* 469.  This Court concluded that the statutory exemption would apply if the evidence introduced by the defendant were believed by the jury; thus, the instruction should have been given.  *Id.,* 474. We then considered whether the error was "outcome determinative" because it undermined the reliability of the verdict.  In concluding that the error was not harmless, we stated:

>  The jury received no instruction on an exception to the use tax statute that was crucial to the defendant's defense and was *clearly* supported by the evidence.  There is no question that the error undermined the reliability of the verdict, and thus was "outcome determinative" under

---

[18] *Lukity* involved an evidentiary error and further explained that the effect of an evidentiary error "is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error."  *Id.,* 495.  However, one cannot compare the "tainted" with the "untainted" evidence when the only error asserted is an instructional error. Nevertheless, pursuant to MCL 769.26, we review the "entire cause" to determine whether the error undermined the reliability of the verdict.

*Lukity* and *Elston*. [*Id.,* 474 (emphasis added).]

Thus, pursuant to *Rodriguez,* the reliability of the verdict is undermined when the evidence "clearly" supports the lesser included instruction, but the instruction is not given. In other words, it is only when there is substantial evidence to support the requested instruction that an appellate court should reverse the conviction.[19] As we must consider the "entire cause" pursuant to MCL 769.26, in analyzing this question, we also invariably consider what evidence has been offered to support the greater offense.

Also, it is important to note that this "substantial evidence" standard for determining whether reversal is required on the basis of an instructional error differs from the standard for determining whether the error occurred. As discussed, an evidentiary dispute supported by a rational view of the evidence regarding the element that differentiates the lesser from the greater offense will generally require an instruction on the lesser offense. However, more than an evidentiary dispute regarding the element that differentiates the lesser from the greater offense is required to *reverse* a

---

[19] We note that no intermediate lesser instructions were given in this case. If other lesser instructions had been given and been rejected by the jury, consideration of the "entire cause" would likely lead us to conclude that the error did not undermine the reliability of the verdict. See, e.g., *People v Beach*, 429 Mich 450; 418 NW2d 861 (1988), NW2d 526 (1977); *People v Mosko*, 441 Mich 496; 495 NW2d 534 (1992).

35

conviction; pursuant to MCL 769.26, the "entire cause" must be surveyed.[20]

Applying these harmless error principles to defendant Cornell's case, we conclude that the error was harmless because the evidence did not clearly support a conviction for the lesser included misdemeanor of breaking and entering without permission. It was defendant's position at trial that he broke into the house, but had no intent to steal or commit any other felony. However, in a statement that was admitted into evidence, defendant explained that he, Prescott, and Christopher Cornell went for a walk, during which Prescott stated that "there was a house back in the woods and they had a lot of stuff in there that they could make a lot of money." Christopher Cornell confirmed that he, defendant, and Prescott broke into the house to see what they could find, and that they were "looking for things to steal." Prescott stated that, although he had not planned on taking anything, he would have done so and thought that he "could get a little souvenir." Conversely, there is little evidence in the record to support defendant's assertion that they just went into the

_____

[20] We note that substantial evidence in support of one offense does not necessarily preclude there also being substantial evidence in support of the other offense. While not true of the present case, there may be cases where both the lesser and the greater offenses are supported by substantial evidence. Of course, each case must be evaluated on its own merits.

house to look around. Thus, we cannot conclude that the evidence clearly supports the lesser included misdemeanor instruction of breaking entering without permission.

Therefore, we conclude that defendant Cornell failed to satisfy his burden of showing that it was more probable than not that the failure to provide the requested instruction undermined the reliability of the verdict and that the error in this case was harmless.

IV

We conclude that the trial court erred in refusing to give the requested misdemeanor lesser included offense instruction of breaking and entering without permission. The offense was necessarily included in the greater offenses with which the defendant was charged, and conviction of the greater offenses required the jury to find a disputed factual element, namely, the intent to commit larceny, which was not part of the lesser included offense. However, because the lesser included instruction was not clearly supported by the evidence, defendant failed to establish that it is more probable than not that a different outcome would have resulted had the lesser offense instruction been given. Therefore, the error was harmless and defendant's conviction is affirmed. To the extent that our prior decisions, including *Jones,* *Chamblis, Stephens*, and *Jenkins,* conflict with our holding

37

today, they are overruled.  Our decision in this case is to be given limited retroactive effect, applying to those cases pending on appeal in which the issue has been raised and preserved.[21]

CORRIGAN, C.J., and TAYLOR, YOUNG, and MARKMAN, JJ., concurred with WEAVER, J.

---

[21] See, e.g., *Lowe v Estate Motors Ltd,* 428 Mich 439, 475; 410 NW2d 706 (1987); *Murray v Beyer Mem Hosp,* 409 Mich 217, 221-223; 293 NW2d 341 (1980).

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

No. 115833

ADAM KEITH CORNELL,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

I agree with the majority that it was an abuse of the trial court's discretion to refuse to deliver the lesser included offense instructions for breaking and entering without permission. MCL 750.115. However, I disagree with the majority's overruling of this Court's longstanding precedent in rendering its decision.

I would retain and follow that precedent, adhering to the five-part test for lesser included misdemeanor instructions announced in *People v Stephens*[1] and consistent with MCL

_____

[1]416 Mich 252; 330 NW2d 675 (1985).

768.32(1). Moreover, I would find that defendant was deprived of lesser included offense instructions critical to his defense, which was that he entered the house to look around, not to steal. Because credible evidence was admitted that supported that defense, the failure to give the instruction was not harmless error. The majority asserted as much in *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000).

### I. Lesser-Included Misdemeanor Offenses

Neither party to this case disputed that *Stephens* is controlling authority, and neither advocated that *Stephens* be overruled. Under *Stephens*, whenever the following conditions are met, the trial judge must give an instruction to the jury on a lesser included misdemeanor: (1) the defendant makes a proper request, or (2) where the prosecutor requests the instructions, the defense has had adequate notice, and (3) there is an "inherent relationship" between the charged offense and the requested misdemeanor, (4) the misdemeanor is supported by a rational view of the evidence admitted at trial, and (5) the requested instructions do not "result in undue confusion or some other injustice." *Stephens*, *supra* at 261-264.

The *Stephens* test is consistent with MCL 768.32(1), which reads:

> Except as provided in subsection (2) [regarding controlled substance offenses], upon an

2

indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

The majority announces the rule "that a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." Slip op, p 26. It asserts that its rule better conforms to MCL 768.32(1) than does *Stephens*. I disagree.

The rule that the majority articulates is merely a watered-down version of the *Stephens* test.[2] Both require that the element distinguishing the lesser misdemeanor from the charged offense be at issue. Both require that the lesser

---

[2]The majority's holding is not limited to overruling the *Stephens* test for lesser included misdemeanor offenses. Its real reach is the creation of a blanket rule for all lessor offense instructions, including cognate lesser offenses and necessarily included felony offenses. The rule imposes a high burden for proving error requiring reversal in lesser included felony cases and completely precludes the delivery of cognate lesser offense instructions. But the majority devotes no direct discussion to this dramatic change in Michigan law. See *People v Mosko*, 441 Mich 496, 500-501; 495 NW2d 534 (1992) (failure to give a requested instruction on a necessarily included lesser felony is error requiring reversal); *People v Beach*, 429 Mich 450, 453, 461-465; 418 NW2d 861 (1988) (cognate lesser offense instructions must be delivered when supported by the evidence).

3

offense be supported by a rational view of the evidence. However, the rule articulated today omits the safeguards of notice to the defendant and protections against undue jury confusion. Although I recognize that these safeguards are not explicitly required by MCL 768.32(1), neither is the evidentiary requirement to which the majority clings.[3]

Wisely, the *Stephens* Court recognized that unrestricted misdemeanor instructions might result in compromise verdicts and convictions for misdemeanor offenses unsupported by the evidence. It recognized, also, that the one-year cutoff rule established in *People v Chamblis*[4] is overly simplistic. The *Stephens* Court unanimously set forth a well-reasoned framework for deciding what lesser included misdemeanor instructions must be delivered to a jury.

When the majority discusses earlier interpretations of MCL 768.32(1), those more consistent with its view that lesser instructions always must be supported by the evidence, it refers to the statute's "construction." Slip op, p 10. It reverts to the decision in *People v Hanna*,[5] which devotes much of its analysis to *rejecting* MCL 768.32(1)'s reference to

---

[3]Neither notice nor jury confusion is at issue here, but the majority dismisses these basic procedural requirements without discussion.

[4]395 Mich 408, 428-429; 236 NW2d 473 (1975).

[5]19 Mich 316 (1869).

"degree offenses."  *Hanna* illustrates that MCL 768.32(1) does not provide a clear mandate that this Court must apply.  In readopting *Hanna*, the majority does not return to a statutory mandate that was disregarded by this Court in *Stephens*.  Rather, it reverts to a *construction* of the statute long ago abandoned by this Court as unworkable.

While recognizing that the law concerning lesser included offenses in Michigan has "not been clear or consistent," the majority has done nothing to promote consistency.  I would adhere to this Court's precedent in *Stephens*, as well as other precedent unnecessarily overruled by today's decision.[6]

## II.  The Harmful Error

Analyzing the instant case under *Stephens,* defendant satisfied requirements (1), (3), and (5).  Requirement (2) is inapplicable.  The only question concerns requirement (4), whether the instructions were supported by a rational view of the evidence.  To satisfy that requirement, the element of defendant's intent to commit larceny must have been enough in dispute that the jury could find him innocent of breaking and entering with intent to commit larceny and guilty of breaking and entering without permission.  See *id.* at 263.

---

[6]In addition to *Stephens,* the majority overrules *People v Jenkins*, 395 Mich 440; 236 NW2d 503 (1975), *People v Chamblis, supra, People v Jones*, 395 Mich 379; 236 NW2d 461 (1975), and their extensive progeny.

Defendant's entire defense was that he did not intend to steal anything from the house. Although his position was not compelling, there was some evidence to support it in addition to his own conflicting statements to police, which the prosecution put in evidence. In his first written statement to police, defendant repeatedly emphasized that he never intended to steal anything from the house. The prosecution's witnesses gave statements to police and testified at trial at least arguably consistent with the defense.

The credibility of the evidence must be evaluated by the jury. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). The trial court usurped the jury's role when it refused to give instructions that were supported by a rational view of the evidence. This was an abuse of the trial court's discretion.

The majority agrees that the instructions should have been delivered. The point of contention is whether the trial court's error was harmless. The majority applies the harmless error test with little discussion about whether the error was constitutional in nature. Defendant argues that it was, and he makes a strong case. An instructional error may rise to the level of a constitutional error by violating a defendant's right to due process. See *People v Carines*, 460 Mich 751, 761; 597 NW2d 130 (1999); see also *United States v Gaudin*, 515

6

US 506, 510; 115 S Ct 2310; 132 L Ed 2d 444 (1995). An example is where the trial court omits from the instructions an element of the charged offense. *Carines*, *supra*; *People v Duncan*, 462 Mich 47, 52; 610 NW2d 551 (2000).

Here, the judge denied the jury an opportunity to consider defendant's theory of the case. This deprived defendant of his right to a fair trial, an error constitutional in nature. Hence, it is the burden of the prosecution to prove that the error was harmless. *Carines*, *supra* at 774.

I believe that the instructional error in this case was not harmless, even when analyzed as nonconstitutional error. It is well established that, where a court fails to give lesser included offense instructions, the error is harmless if the jury rejects an option to convict of another reduced offense. In *People v Beach*,[7] the Court endorsed this test, which is found in *People v Ross*, 73 Mich App 588; 252 NW2d 526 (1977).[8] However, where the trial court failed to instruct

---

[7]429 Mich 450; 418 NW2d 861 (1988).

[8]The *Beach* Court modified the holding in *People v Richardson*, 409 Mich 126; 293 NW2d 332 (1980), to the extent that it was inconsistent with *Ross*. The *Richardson* Court had held that it is not harmless error to refuse to instruct on a lesser included offense of involuntary manslaughter and reckless use of a firearm. It reasoned that "[t]he jury was . . . denied the freedom to act according to the evidence, and moreover was deprived of any option to convict (continued...)

7

the jury regarding the only requested lesser included misdemeanor offense, the *Ross* test cannot be applied.

In *Mosko*, this Court extended the harmless error test articulated in *Beach*, first considering whether the jury had rejected an instructed lesser included offense to convict the defendant of the charged offense. *Id.* at 501-502. However, the *Mosko* Court could not apply the "intermediate charge" analysis on the facts of that case.[9] Instead, it concluded that the error was harmless because the distinguishing factor between the charged offense and the uninstructed offense was not disputed at trial. *Id.* at 505-506. Thus, when a jury does not reject a lesser offense, the failure to deliver requested instructions is not harmless when the distinguishing element is at issue.

This Court's regular application of harmless error

---

[8](...continued)
consistently with the defendant's testimony . . . ." *Id.* at 141. It reached that conclusion even though the jury was instructed on first-degree murder, second-degree murder and voluntary manslaughter, and returned a guilty verdict on first-degree murder. *Id.* at 134-135.

[9]The defendant in *Mosko* was convicted of first-degree criminal sexual conduct although the jury was given instructions for second-degree criminal sexual conduct. However, first-degree criminal sexual conduct is a penetration offense, whereas second-degree criminal sexual conduct is a contact offense. The jury was not instructed on third-degree criminal sexual conduct, a penetration offense. Thus, its rejection of second-degree criminal sexual conduct shed no light on whether it would have convicted the defendant of third-degree criminal sexual conduct. See *id.* at 497, 505.

analysis to evidentiary issues is also instructive. In *People v Lukity*,[10] a majority held that, in cases of preserved nonconstitutional error, the defendant bears the burden of proof. The defendant must show that the outcome of the trial would more probably than not have been different, but for the evidentiary error. *Id.* at 496-497. This Court applied the *Lukity* standard to evidentiary error in *People v Elston*, 462 Mich 751; 614 NW2d 595 (2000), *and People v Snyder*, 462 Mich 38; 609 NW2d 831 (2000). There, whether the error was outcome determinative was held to depend on whether it undermined the reliability of the verdict. *Elston*, *supra* at 766; *Snyder*, *supra* at 45.

The majority recently addressed an instructional error in *Rodriguez*, although not in the context of lesser included offenses.[11] It concluded that the error was not harmless because "[t]here was no question that [it] undermined the reliability of the verdict, and thus was 'outcome determinative' under *Lukity* and *Elston*." *Rodriguez*, *supra* 474. It was significant that the jury had received no instruction on law that was "crucial to the defendant's defense and [the instruction] was clearly supported by the

---

[10]460 Mich 484; 596 NW2d 607 (1999).

[11]The instruction under review in *Rodriguez* concerned a statutory exception to culpability for failing to pay taxes. *Id.* at 468-469.

9

evidence." *Id.*

After applying the rule of harmless error that has emerged from this Court's precedent, I conclude that the error in this case was not harmless. The fact that substantial evidence supported defendant's conviction must be regarded as irrelevant under the circumstances of this case, where there was evidence to support the lesser offense. Moreover, defendant admitted to the lesser offense in this case. The jury was put in the position either of convicting on the higher charge or seeing the admitted crime go unpunished. By being denied jury instructions on the lesser included misdemeanor, defendant was denied the opportunity to present his defense to the jury. The error was crucial in this case and cannot be considered harmless.

The jury here, like the jury in *Richardson*, was unable to match defendant's statements and theory of defense with a verdict option. Unlike *Richardson* and *Beach*, there was no indication that it would have rejected the lesser included offense, had it been given the opportunity.[12] Moreover, unlike in *Mosko,* the distinguishing element between defendant's

_____

[12]In fact, the circumstances suggest the opposite. When it acquitted defendant of the arson charge, the jury rejected the prosecution's claim that defendant intended to burn the house. Defendant admitted being in the house, but denied either setting the fire or intending to steal anything. It is possible that the jury would have believed him on both counts.

10

charged offense and the requested lesser included offense was very much in dispute.[13]  Therefore, the reliability of the verdict was undermined and the error was not harmless. Defendant is entitled to a new trial.

The majority takes the word "clearly" from the *Rodriguez* requirement that the lesser offense be "clearly supported by the evidence,"[14] and applies it to require *substantial* evidence supporting the lesser offense.  Slip op, pp 35-36.  In so doing, it expands *Rodriguez* to impose an unduly harsh burden on a defendant.

When a criminal defendant is denied the opportunity to present his defense to the jury, it should not matter that the evidence supporting the defense is not substantial.  The error is significant if the lesser offense is supported by any credible evidence.  It must clearly support the lesser offense in that it must be more than a bare trace of evidence; it must be something concrete on which a jury could base its verdict. The majority's expansion of *Rodriguez* takes the power to

---

[13]In many if not most cases of breaking and entering, a defendant's claim that he entered without any malicious intent is suspect.  However, the house in this case is the "Heston house," the one-time home of famed actor Charlton Heston. Certainly, one could conclude that such a house would be an attractive local curiosity.  Defendant's testimony that he went to the house only to look around was both corroborated and contradicted by his companions.

[14]*Id.* at 474.

11

decide a defendant's guilt or innocence, consistent with the evidence before it, out of the hands of the jury.

### III.  Other Lesser Offenses

The majority strays beyond the matter at hand, lesser included misdemeanor offenses, to overrule precedent not even controlling in the instant case.  It devotes pages of discussion to cognate lesser offenses, and its holding clearly applies to necessarily included felony offenses.

Not only do I disagree with the reasoning and the result, I also oppose the majority's wholesale overruling of the precedent of this Court.  In defiance of stare decisis, the majority contributes to a constant state of flux in Michigan law.  Here, the majority fails even to give lip service to the principle of stare decisis, instead dismissing this Court's precedent as "wrongly decided."

### IV.  Conclusion

The trial court abused its discretion by refusing to deliver the lesser included misdemeanor instructions for breaking and entering without permission.  Those instructions should be given in every case where a defendant has offered some credible evidence to support a lesser included misdemeanor offense.  Moreover, I would not stray from the well established and long recognized precedent of this Court that conforms with the legislative mandate of MCL 768.32(1).

12

Applying that precedent, I would find the error in this case was not harmless, and I would grant defendant a new trial.

CAVANAGH, J., concurred with KELLY, J.