*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 25, 2002**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                  No. 117024

SHAWN JOSEPH SILVER,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

    In *People v Cornell*, 466 Mich __; ____ NW2d ___ (2002), we overruled contrary prior case law and explained that pursuant to MCL 768.32(1),[1] a trial court, upon request,

---

[1]

    Except as provided in subsection (2), upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt

(continued...)

should instruct the jury regarding any necessarily included lesser offense, or an attempt, (irrespective of whether the offense is a felony or misdemeanor), if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense, and a rational view of the evidence would support it.

We further held that the failure to instruct the jury regarding such a necessarily lesser included offense is error requiring reversal, and retrial with a properly instructed jury, if, after reviewing the entire cause, the reviewing court is satisfied that the evidence presented at trial "clearly" supported the lesser included instruction.[2]

As explained below, consistent with *People v Cornell*, we hold that the trial court's failure to instruct Mr. Silver's jury regarding a necessarily included lesser offense was error requiring reversal.

I

The complainant, Amber Gardner, testified that on October 12, 1997, she left her home for approximately ten to fifteen minutes to run to the store. When she left, the doors to her

---

[1](...continued)
to commit that offense.


[2]A offense is "clearly" supported when there is substantial evidence to support the requested lesser instruction. *People v Cornell, supra.*

home were closed, but unlocked. Upon returning to her home, she heard a noise in the kitchen. When she entered the kitchen, she saw defendant standing there. She began yelling at him to leave. Ms. Gardner testified that as defendant was leaving through the back door, he commented that "I was just here to use your potty," and then ran through the field behind her home.

Ms. Gardner also testified that she called 911, and Officer Robert Wesch arrived approximately three to five minutes later. She told him what defendant said as he left and that, at that time, she did not notice anything missing from her home. A few days later she said she told Detective Dennis Maurey that she believed that two to three weeks' worth of change, accumulated on a dresser in her bedroom and visible through her bedroom window, was missing. Although the change was never recovered, it was this missing change that gave the circumstantial basis for the assertion that defendant had entered with the intent to commit a larceny.

Defendant testified that on the day of the incident, as he was walking in the neighborhood, he observed an elderly woman having trouble starting her lawn mower. He offered to help her and ended up mowing her whole yard. When he asked to use her bathroom, she would not let him because she did not know him. Defendant indicated his brother lived in the

3

neighborhood, so he left the woman's home and went to his brother's house. However, his brother was not home. The only other person he knew in the area was Ms. Gardner, with whom he had a "wave back and forth" relationship because he had helped her, about six months earlier, move some boxes into her house. He decided to go to her house, which was about half a block from his brother's, to see if he could use the bathroom. When he arrived, he knocked on the door, and, receiving no response, he opened the door and asked if anyone was home. Receiving no reply, he went in and used the bathroom. As he was leaving through the back door, he heard a noise and Ms. Gardner entered the kitchen. She yelled at him to get out. As he was leaving, he told her that he was sorry and that he had just used the bathroom.

On rebuttal, Ms. Gardner denied that she had ever met defendant, that he had helped her carry boxes into her home, or that she and defendant would exchange waves when they saw each other.

The trial court instructed the jury regarding the charged offense of first-degree home invasion MCL 750.110a(2),[3] but

---

[3]MCL 750.110a(2) provides in relevant part:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, (continued...)

4

denied defense counsel's request that the jury be instructed on the lesser included offense of breaking and entering without permission, MCL 750.115(1).[4]

The trial court denied the request, indicating that it might cause some confusion to give the requested instruction and that if the jury believed defendant it would be duty bound to acquit him. The jury returned a verdict of guilty of the charged offense.

Defendant appealed, and the Court of Appeals affirmed his

---

[3](...continued)
larceny, or assault in the dwelling, or a person who breaks and enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

[4]MCL 750.115(1) provides in pertinent part:

Any person who breaks and enters or enters without breaking, any dwelling, house, . . . without first obtaining permission to enter from the owner or occupant, agent, or person having immediate control thereof, is guilty of a misdemeanor.

conviction in a divided opinion.[5]  All three judges of the Court of Appeals panel determined that the trial court erred in refusing to give the instruction because the only element in dispute was whether defendant possessed the requisite intent to commit larceny and there was little danger that the jury would become confused.  However, the majority, citing *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999), concluded that the error was harmless because it was not more probable than not that a different outcome would have resulted had the jury been given the lesser included instruction.

One judge dissented from the majority's conclusion that the error was harmless.  The dissent noted that the jury may have resolved any doubts it had about defendant's intent in favor of conviction.  Further, the dissent was not convinced that the majority's application of *Lukity* was correct or that the comparison of the tainted and untainted evidence was the proper approach for addressing a jury instruction error. Additionally, the dissent noted that the situation was not one in which the jury had a choice of some other lesser offense and had rejected it in favor of a conviction of a higher offense.

This Court subsequently granted defendant's application

---

[5] Unpublished opinion per curiam, issued May 23, 2000 (Docket No. 212508).

6

for leave to appeal and ordered his case argued with *People v Cornell*.[6]

II

We hold that breaking and entering without permission is a necessarily included lesser offense of first-degree home invasion.  Breaking and entering without permission requires (1) breaking and entering or (2)entering the building (3) without the owner's permission.  It is impossible to commit the first-degree home invasion without first committing a breaking and entering without permission.  The two crimes are distinguished by the intent to commit "a felony, larceny, or assault," once in the dwelling.

In this case the intent to commit a larceny in the house was clearly disputed at trial.  Indeed, it was defendant's unvarying position, unblemished by inconsistent statements, that there was an entry without permission, but that there was no intent to steal.  The opening statement giving his theory of the case, the cross-examination of Ms. Gardner, as well as officer Wesch, and his closing argument were all directed to one end: that he was wrongfully inside the house, but did not intend to steal.  The Legislature thinks such things can happen.  After all, they made it a lesser crime to be in a

---

[6] 463 Mich 958-959 (2001).

7

house without permission if there is no felonious intent. Said plainly, the person that would be guilty of this would be a person inside, surely with some motive, just not a criminal motive. If the jurors believed defendant was such a person , they realistically could not act on it unless they had an instruction that gave them that choice.[7] Not to give them an instruction that allowed them to agree with defendant's view of the events in this case undermines the reliability of the verdict. The reason is that there was substantial evidence supporting the lesser offense of breaking and entering without permission. Accordingly, MCL 768.32(1) was violated.

### Response to the dissents

Justice Weaver agrees that the trial court erred in failing to give the lesser offense instruction, but concludes

---

[7]One might argue that the jury would have acquitted defendant if it believed his testimony. However, this is too facile. The United States Supreme Court rejected such an argument in *Keeble v United States*, 412 US 205, 212-213; 93 S Ct 1993; 36 L Ed 2d 844 (1973), when it stated:

> [I]f the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction . . . precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.

8

the error was harmless.  She finds incriminating that Silver was found in the kitchen, not the bathroom.  However, Silver testified with the answer: he was in transit from the bathroom to the back door in this small[8] house.  This is why he was in the kitchen.  Rather than being damaging to Silver's version of events, this fact is consistent with it.

Justice Markman's dissent is notable in that he is the one appellate judge out of the ten who have considered this case who finds that the trial court did not err at all.  Save for him, all have agreed on the crucial issue that the lesser offense was supported by a rational view of the evidence.  Justice Markman's dissent seems to focus on what he perceives to be the irrationality of defendant's story itself, i.e., whether it would have been rational to go into someone's house simply to use the bathroom, rather than, in accord with *Cornell*, if a rational view of the evidence supports defendant's story.  It just must be said: maybe a gentleman such as Justice Markman would not do this, but a less discrete person just might.  Once evidence that rationally supports a lesser crime has been introduced, it's believability is for the jury to decide, not appellate judges.

On the basis of these considerations, we have concluded that the dissents misapprehend the strength of Silver's claim.

---

[8]The house had approximately 720 square feet.

While a jury might not agree with his theory, there was substantial evidence to support it.

## Conclusion

Accordingly, Silver is entitled to a new trial. The judgment of the Court of Appeals is reversed, as is Silver's conviction, and this case is remanded for a new trial with a properly instructed jury.

YOUNG, J., concurred with TAYLOR, J.

STATE OF MICHIGAN

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

　　Plaintiff-Appellee,

v                                                                No. 117024

SHAWN JOSEPH SILVER,

　　Defendant-Appellant.

_____

KELLY, J. (*concurring*).

I agree that it was error for the trial court to refuse to instruct the jury on the lesser included misdemeanor offense of breaking and entering without permission.[9] I also agree that the error was not harmless, under either the *Stephens*[10] test for lesser included misdemeanor instructions or under the newly articulated *Cornell*[11] framework that replaces *Stephens*. I therefore concur in the result.

---

[9]MCL 750.115(1).

[10]*People v Stephens*, 416 Mich 252; 330 NW2d 675 (1982).

[11]*People v Cornell*, 466 Mich ___; ___ NW2d ___ (2002).

I write separately to point out that the decisions in *Cornell* and *Silver* evidence the difficulty of applying the rules established by the *Cornell* majority. The rule to be applied in this case, pursuant to *Cornell*, is that a trial court's erroneous refusal to deliver lesser included offense instructions requires reversal only where substantial evidence supported the instructions. In this case, there was no evidence to contradict defendant's claim that he did not intend to steal when he entered the house. Instead, there was substantial evidence supporting giving instructions for breaking and entering without permission.

This is not to say that evidence supporting a requested instruction must always be uncontroverted to be deemed substantial. I point out that the defendant in *Cornell* advanced a more convincing case for breaking and entering without permission than did the defendant in *Silver*. Mr. Cornell broke into the "Heston house," a local attraction because it was the boyhood home of actor Charlton Heston. Although there was evidence to contradict his claim that he did not intend to steal, there was also evidence supporting his position. Moreover, the jury in *Cornell* believed the defendant when he claimed that he had no intention of burning the house, and acquitted him of the charged arson. MCL 750.73. The jury could have believed just as easily that Mr.

Cornell did not intend to steal anything. Mr. Cornell made an even stronger case that the error required reversal under the substantial evidence test than did Mr. Silver, who claimed he only wanted to use the bathroom.

Unlike my dissenting colleagues, I believe that both *Cornell* and *Silver* were cases of error requiring reversal, rather than harmless error or no error at all. The *Cornell* majority has created an unworkable rule that even it cannot agree to apply in more than an arbitrary fashion. It is clear from today's decisions that the *Cornell* rule leads to arbitrary results.

CAVANAGH, J., concurred with KELLY, J.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                  No.  117024

SHAWN JOSEPH SILVER,

    Defendant-Appellant.

_____

WEAVER, J. *(concurring in part and dissenting in part)*.

I agree with the majority that the trial court erred in refusing to give the requested lesser offense instruction because breaking and entering is a necessarily included lesser offense of first-degree home invasion, the element differentiating the two crimes was disputed and a rational view of the evidence would support an instruction on the lesser offense. However, I dissent from its conclusion that the error was not harmless because, in my opinion, the evidence presented at trial did not clearly support a conviction of the lesser included misdemeanor of breaking and

entering.  Therefore, I would conclude that the error was harmless and would affirm defendant's conviction.

As we explained in *People v Cornell,* 466 Mich ___, ___; ___ NW2d ___ (2002),

> [T]he reliability of the verdict is undermined when the evidence "clearly" supports the lesser included instruction, but the instruction is not given.  In other words, it is only when there is substantial evidence to support the requested instruction that an appellate court should reverse the conviction.  As we must consider the "entire cause" pursuant to MCL 769.26, in analyzing this question, we also invariably consider what evidence has been offered to support the greater offense. [Slip op at 37.][1]

Applying the harmless error principles we articulated in *Cornell* to defendant Silver's case, I would conclude that the error was harmless because the evidence did not clearly support a conviction of the lesser included misdemeanor of breaking and entering without permission.  Although defendant stated that his intent upon entering the home was to use the

_____

[1] We also clarified that this "substantial evidence" standard for determining whether the error is harmless differs from the standard for determining whether the error occurred.  As we explained,

> an evidentiary dispute supported by a rational view of the evidence regarding the element that differentiates the lesser from the greater offense will generally require an instruction on the lesser offense.  However, more than an evidentiary dispute regarding the element that differentiates the lesser from the greater offense is required to *reverse* a conviction; pursuant to MCL 769.26, the entire cause must be surveyed.  [Slip op at 38.]

bathroom,[2] the evidence presented at trial overwhelmingly showed the contrary. First, the complainant testified that upon returning to her home, she heard a noise in the kitchen, not the bathroom. When she entered the kitchen, she saw defendant standing there. Defendant then fled through the field behind her home. Second, an investigation by Officer Wesch revealed no signs that defendant had used the bathroom. Third, the complainant testified that she believed that approximately two to three week's worth of change was missing from the top of a dresser in her bedroom. Complainant testified that this change was visible through the bedroom window. Fourth, complainant testified that, although she had observed defendant in the neighborhood, she did not know him, and he had not helped her carry boxes into her home.[3]

While a rational view of the evidence supporting defendant's "bathroom argument" might have warranted an instruction on the lesser included offense, the borderline nature of this argument may also be taken into consideration in evaluating the extent to which the failure to give such

---

[2] According to defendant, the elderly woman, whose yard he gratuitously mowed after helping her start her lawnmower, would not let him use her bathroom because she did not know him, and his brother, who lived in the area, was not home.

[3] This was contrary to defendant's assertions that he had helped complainant carry boxes into her home and that they knew each other and would wave to each other.

instruction was harmful.

I believe that the misdemeanor of breaking and entering without permission was not clearly supported by the evidence, and that the refusal to instruct on the lesser included offense was harmless error. Therefore, I would affirm defendant's conviction.[4]

CORRIGAN, C.J., concurred with WEAVER, J.

---

[4] I note that the Court of Appeals remanded defendant's case to the trial court for resentencing because the trial court failed to properly respond to defendant's objections to the accuracy of the presentence investigation report. Leave to appeal was not sought on this determination.

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                      No. 117024

SHAWN JOSEPH SILVER,

    Defendant-Appellant.

_____

MARKMAN, J. (*dissenting*).

    I respectfully dissent.  As stated in *People v Cornell*, 466 Mich __; __ NW2d __ (2002), a trial court should instruct the jury regarding a necessarily included lesser offense if the "charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it."  Here, I do not believe that the disputed issue, the element of intent to commit a felony within the dwelling, was supported by a rational view of the evidence.

    In this case, defendant, an utter stranger to the victim, was discovered inside the victim's home, from which a small amount of money was subsequently found to be missing.  Upon being discovered in the home by the victim, defendant

asserted, "I was just here to use your potty."[1] On the basis of this evidence, and nothing more, the majority concludes that the issue of defendant's intent to commit a felony was placed in dispute, and that defendant's contention that he lacked such intent was supported by a "rational view" of the evidence.

I disagree. It is not the law that *any* theory asserted by a defendant, no matter how preposterous, must be treated as the equivalent of a "rational view" of the evidence, thereby requiring an instruction. Trial courts need not suspend their common sense in assessing what constitutes a "rational view" of the evidence.[2] Indeed, I am concerned that, while the ink is still not yet dry on *Cornell*, the majority is transforming the standard for instructions on necessarily included lesser

---

[1] As Justice Weaver's dissent correctly points out, the evidence further shows that the victim testified that, upon returning home, she heard a noise in the kitchen, not the bathroom; money was missing from a dresser in her bedroom, not the bathroom; and there is no evidence whatsoever that defendant had ever used the bathroom. Contrary to the majority's contention, there are many forms of evidence that might suffice to show that one has recently been in a bathroom, e.g., fingerprints, shoeprints in or approaching the bathroom, an unflushed toilet, a raised toilet seat, a wet towel or basin, wet soap, and so forth. In any event, it should not be seen as surprising that, the more incredible the defense, the less evidence can generally be found in support of it.

[2] That, as the majority observes, it was defendant's "unvarying position" that he was merely in the home in order to use the "potty" does not transform an irrational argument into a rational one.

2

offenses by effectively reading out of the law the requirement that there must be a "rational view" of the evidence in support of such instructions.[3]  Instead, what appears dispositive for the majority here is that there was a "dispute," a dispute evidenced exclusively by defendant's "potty" statement.  The mere fact of such dispute apparently compels an instruction, and the absence of such an instruction requires that defendant's conviction be reversed.  However, the additional requirement of *Cornell* that a "rational view" of the evidence must exist in support of an instruction implies that, in some circumstances, there will be no such "rational view," despite the existence of a genuine "dispute." This further implies, contrary to the majority, that not all issues of "believability . . . [are] for the jury to decide." *Ante* at 9.  The "rational view" requirement makes clear that the trial court must bring some degree of judgment to its responsibilities, and that neither the trial court nor the jury need be infinitely credulous in seeking to ascertain the truth.

Because I do not believe that the requested lesser offense instruction here was supported by a "rational view" of

---

[3] If the majority is not, in fact, altogether reading this requirement out of the law in this case, it is at the very least transforming the concept of a "rational view" of the evidence into a "not a logically impossible view" of the evidence.

3

the evidence,[4] the trial court did not err, in my judgment, in failing to give such an instruction. Therefore, I would affirm defendant's conviction.[5]

---

[4] Much less is it the case that the evidence presented here "clearly" supported the defendant's requested instruction, thereby compelling reversal in the absence of such an instruction. *Cornell, supra.*

[5] While, as the majority feels impelled to point out, I am in the minority on this case, this tends to be true of those who dissent. *Ante* at 9. More to the point, the majority considerably overstates my isolation. First, a review of the Court of Appeals analysis indicates that it did not specifically analyze the "rational view" of the evidence; instead, it focused on the fifth prong of the test in *People v Stephens*, 416 Mich 252, 260; 330 NW2d 675 (1982), stating that a requested lesser included offense instruction must not result in undue confusion or injustice. Specifically, the Court concluded that the trial court erred in its refusal to instruct because "the use of similar terms in the two offenses [would not] create confusion for the jury." Unpublished opinion per curiam, issued May 23, 2000 (Docket No. 212508) at 2. Despite such a conclusion, two members of the panel still determined that the error was harmless. Second, I note that the chasm between myself and Justice Weaver's dissent may be considerably less wide than suggested by the majority; her dissent characterizes defendant's "bathroom argument" as one that is of a "borderline nature," *ante* at 3, and concludes that the instructional error was harmless. Finally, I note that the trial judge himself, who sat through the entire trial, concluded that no lesser included instruction was warranted in this case.

In further response to the majority, it is not merely a "gentleman" who would not invade the home of a stranger, but it is any person who is prepared to live by the fundamental norms of society. *Ante* at 9. While the majority is correct that the jury has a broad fact-finding role, the role has never been without limits. No jury has a right to nullify, nor has the jury here asserted such a right to nullify, the fundamental rules of society by exonerating individuals charged with serious crimes on the basis of preposterous and irrational defenses.

4