# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICHARD ALLEN SMITH,

        Defendant-Appellant.

UNPUBLISHED
July 26, 2016

Nos. 325861; 331911
Genesee Circuit Court
LC No. 13-034288-FC

Before: WILDER, P.J., and MURPHY and O'CONNELL, JJ.

PER CURIAM.

In Docket No. 325861, defendant appeals as of right his jury trial conviction of voluntary manslaughter, MCL 750.321. The trial court originally sentenced defendant in January 2015 to a prison term of 10 to 15 years, which was a departure from the sentencing guidelines range of 36 to 71 months. While the appeal in Docket No. 325861 was pending, this Court granted defendant's motion to remand in order to allow him to move for a new trial and resentencing. On remand, the trial court denied defendant's motion for new trial but granted his request for resentencing; however, the court again departed from the corrected guidelines range of 29 to 57 months, imposing the same sentence of 10 to 15 years' imprisonment. In Docket No. 331911, defendant appeals as of right the judgment of sentence imposed upon resentencing. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant's conviction arises from the fatal beating of 17-year-old Benjamin Tatro at a party in Burton, Michigan. Defendant was tried jointly with codefendant Richard Zinn, before separate juries. There was evidence presented showing that Zinn engaged in a fight with Tatro in the road next to the house where the party was being held. Zinn punched Tatro in the face, and then Zinn forced Tatro across the street, where Tatro tripped over the curb and fell to the ground. Zinn got on top of Tatro and struck him, inflicting, as reflected in various accounts, anywhere from one to six blows. Tatro did not fight back. During the incident, defendant stood to the side and watched. The fight was broken up, and Tatro, Zinn, and defendant went inside the "party" house. There was mixed testimony concerning Tatro's condition at this point. One witness observed that Tatro looked normal except for a bloody nose; one witness did not believe that Tatro had any injuries or blood on his face; these same two witnesses also indicated that Tatro walked into the house under his own power; another witness stated that Tatro had to be carried into the house; and a final witness testified that Tatro walked into the house, but with physical

-1-

support from others. The evidence indicated that both Zinn and defendant were much larger than the diminutive Tatro.

Five to ten minutes later, a witness observed Tatro, Zinn, and defendant in a back bedroom of the house, with Tatro seated in a recliner and defendant punching him in the face. The witness testified that Tatro was unconscious, that "there was blood all over his face, pouring out of his nose and out of his mouth," and that Tatro "was pretty beat up." The witness then yelled at defendant, and defendant responded that he had only hit Tatro "a few times." Other witnesses testified to the presence of holes in the wall of the bedroom and blood splatter on the carpet and wall, which had not been there previously. Witnesses who later saw defendant testified that his hands, shirt, and pants were covered in blood. A witness who queried defendant about what had happened testified that defendant responded that "he had beat up a kid, and he . . . thought that he may had killed him." Defendant indicated to the witness that he was "pretty sure" that he had seriously injured Tatro. Defendant told another witness that he had hit Tatro twice earlier, but that it was "other people" who beat Tatro in the back bedroom of the house.

There was medical testimony that Tatro's pancreas had been torn in two, that his spleen had to be removed, that he suffered damage to his liver, that he had abrasions, contusions, and bruises about his head and face, including two black eyes, that there were hemorrhages under the surface of his scalp, that his right earlobe was split, and that Tatro's brain was swollen. Tatro died nine days after the assault. The cause of death was determined to be blunt force trauma.

Both defendant and Zinn were charged with open murder. Defendant's jury was instructed on first-degree premeditated murder, MCL 750.316(1)(a), second-degree murder, MCL 750.317, and voluntary manslaughter. The jury convicted defendant of voluntary manslaughter. Zinn requested and received an instruction on simple assault and battery, MCL 750.81, which was not requested by defendant's counsel, and Zinn was convicted of assault and battery and sentenced to 93 days in jail, which he had already served. The trial court, departing from the minimum guidelines range of 36 to 71 months, sentenced defendant to 10 to 15 years' imprisonment. On appeal in Docket No. 325861, defendant argued that defense counsel was ineffective for failing to request a jury instruction on assault and battery and that there were a variety of sentencing errors, including the assessment of two points for prior record variable (PRV) 5, MCL 777.55. While the appeal was pending, this Court granted defendant's motion to remand, allowing defendant to "file a motion for a new trial and for resentencing" and directing the trial court to "conduct an evidentiary hearing and resentence defendant . . ., if deemed appropriate." *People v Smith*, unpublished order of the Court of Appeals, entered September 17, 2015 (Docket No. 325861).

On remand, defendant filed a motion for new trial and resentencing, raising the ineffective assistance claim and the alleged sentencing errors and requesting an evidentiary or *Ginther*[1] hearing. The trial court construed this Court's remand order as giving it the discretion to determine whether to conduct an evidentiary hearing, as well as resentencing, on the basis of

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

whether it was "deemed appropriate." We are uncertain whether this interpretation of this Court's less-than-clear remand order comported with the panel's intent, but the trial court's construction cannot be viewed as being unreasonable. The trial court ruled that it was unnecessary, or not appropriate, to conduct a *Ginther* hearing, as the trial court was adamant that it would not have instructed the jury on assault and battery even had it been requested by defense counsel, given that a rational view of the evidence did not support a simple assault and battery instruction. Accordingly, the trial court denied defendant's request for a new trial. But the trial court did grant defendant's motion for resentencing, finding that PRV 5 should have been assessed at zero points, which decreased the minimum sentence range to 29 to 57 months. Nevertheless, on resentencing, now under advisory guidelines, *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), the trial court again departed from the guidelines and sentenced defendant to 10 to 15 years' imprisonment. Defendant challenges the resentencing in Docket No. 331911.

## II. DOCKET NO. 325861 – INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant maintains that defense counsel was ineffective for failing to request an instruction on assault and battery. Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the well-established principles governing a claim of ineffective assistance of counsel, observed:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

In *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), the Michigan Supreme Court held "that a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the

lesser included offense and a rational view of the evidence would support it." The Court ruled that "MCL 768.32(1) does not permit cognate lesser instructions." *Id.* at 359. Here, both defendant and the prosecution agree that assault and battery is a necessarily included lesser offense of murder. We decline to address and resolve that particular question. Rather, we shall proceed with our analysis on the assumption that assault and battery is a necessarily included lesser offense of murder.[2] A "battery is an intentional, unconsented and harmful or offensive touching of the person of another," and an "assault" is either an attempt to commit a battery or an unlawful act that places another person in reasonable apprehension of an immediate battery. *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (citation and quotation marks omitted).

For purposes of our analysis, we shall also accept the contention by defendant's appellate counsel that trial counsel's failure to request an assault and battery instruction was not part of a strategic all-or-nothing defense. In an affidavit executed by appellate counsel and attached to defendant's motion to remand, counsel averred that she spoke to trial counsel and that trial counsel "stated that he never considered requesting an assault and battery instruction" and "remarked that it was simply something that did not occur to him at the time." We surmise that defendant had desired to elicit testimony from trial counsel to that effect at a *Ginther* hearing, which never came to fruition. We shall assume the accuracy of appellate counsel's affidavit regarding trial counsel's communications to appellate counsel, thereby negating defendant's insistence that the case be remanded once again so that a *Ginther* hearing can finally be conducted. Ultimately, even with our assumptions concerning trial counsel's mindset and that assault and battery is a necessarily included lesser offense of murder, defendant fails to establish deficient performance and the requisite prejudice. We agree with the trial court's assessment that a rational view of the evidence did not support an instruction on *simple* assault and battery. Generally speaking, this Court reviews for an abuse of discretion a trial court's determination that a rational view of the evidence did not support a requested jury instruction. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

As noted by JUSTICE WILLIAMS in *People v Johnson*, 407 Mich 196, 218; 284 NW2d 718 (1979), Chapter XI of the Penal Code, which covers assaults, MCL 750.81 *et seq.*, "lists a series of assaults punishable as either misdemeanors or felonies depending on the severity of the offense." And the least severe offense is simple assault and battery under MCL 750.81(1), which is a 93-day misdemeanor and does not require any injury to have been inflicted. In light of the evidence showing that defendant was beating an unconscious Tatro, whom defendant knew had already been thrashed by Zinn, that blood splatter covered defendant and parts of the bedroom, that Tatro's injuries were extensive and horrific, as recited above, and that Tatro died from his injuries, a rational view of the evidence plainly did not support a simple assault and battery instruction. There was evidence that defendant himself feared that Tatro might die from the beating.

---

[2] We do note that the prosecution's theory of the case had always been murder by battery, which was known by defendant.

It is important to recognize that the jury's verdict finding defendant guilty of voluntary manslaughter reflected a determination that defendant, through the assault, and albeit with adequate provocation or in the heat of passion, caused Tatro's death and that defendant had either the intent to kill, the intent to commit great bodily harm, or the intent to create a very high risk of death or great bodily harm. See *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003) (reciting elements of voluntary manslaughter). In general, a rational view of the evidence will support an instruction on a necessarily included lesser offense when the evidence reflects an actual and sufficient dispute regarding a factual element that differentiates the greater offense from the lesser offense. *Cornell*, 466 Mich at 352, 361. The primary factual element differentiating assault and battery from murder is the death of a victim resulting from the assault and battery, but there was no dispute here that Tatro died as a result of the beating. And, given the record, there was not a sufficient dispute concerning whether it was defendant's actions alone or in conjunction with Zinn's assault that caused the death (aiding and abetting), as opposed to Zinn's unassisted conduct alone causing Tatro's death. Moreover, even if there was a sufficient dispute on that matter, the jury's verdict would undermine any claim of prejudice, where the jurors agreed that defendant's conduct, for purposes of voluntary manslaughter, caused Tatro's death.

This case was not a simple assault and battery case relative to defendant.[3] Accordingly, a request for an assault and battery instruction would have been futile, which the trial court itself confirmed on remand, and the court's position that a rational view of the evidence would not have supported an assault and battery instruction did not constitute abuse of discretion. Counsel is not ineffective for failing to raise a futile or meritless claim. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). And given the jury's conclusion that defendant caused Tatro's death and that the trial court was adamant that it would not have given an assault and battery instruction even if requested, defendant cannot establish the requisite prejudice. Reversal is unwarranted.

### III. DOCKET NO. 331911 – RESENTENCING

Defendant argues, with respect to resentencing, that OV 5, MCL 777.35 (psychological injury to member of victim's family), was improperly assessed at 15 points, that OV 6, MCL 777.36 (intent to kill or injure), was improperly assessed at 25 points,[4] that OV 7, MCL 777.37

---

[3] We acknowledge defendant's argument that the trial court instructed Zinn's jury on assault and battery, suggesting that defendant was equally entitled to such an instruction had it been requested; however, as somewhat alluded to by the trial court, the argument fails to appreciate the distinctions between the evidence inculpating defendant and that incriminating Zinn. The trial court voiced on multiple occasions its belief that Zinn was likely the more culpable party, but the court also recognized that the nature of the evidence actually presented was more damaging to defendant.

[4] At resentencing, the trial court, on agreement by the parties, reassessed OV 6 at ten points, which is the number of points that defendant claims on appeal is the appropriate total. Accordingly, defendant's argument concerning the scoring of OV 6 is moot.

(aggravated physical abuse), was improperly assessed at 50 points, that OV 8, MCL 777.38 (victim asportation), was improperly assessed at 15 points, that OV 10, MCL 777.40 (exploitation of vulnerable victim), was improperly assessed at 5 points, and that OV 19, MCL 777.49 (interference with administration of justice), was improperly assessed at 10 points. Defendant argues that the scores were improper because (1) they entailed unconstitutional judicial fact-finding under *Lockridge*, 498 Mich 358, and (2) they were not supported by the evidence, even allowing for judicial fact-finding. Defendant also argues that counsel was ineffective for failing to object to the scores for OVs 5 through 8 and 10.

On resentencing, the trial court, as noted earlier, reduced PRV 5 from two to zero points, decreased OV 6 from 25 to ten points, and increased OV 19 from zero to ten points, leaving all other scores intact from the original sentencing and giving defendant a total PRV score of zero points and a total OV score of 130 points. This placed defendant at PRV level A and OV level VI in the applicable class C grid, MCL 777.64, thereby providing a guidelines range of 29 to 57 months. OV level VI is the highest OV level available and is implicated with a total OV score of 75 or more points. MCL 777.64.

With respect to defendant's constitutional argument under *Lockridge*, judicial fact-finding in the context of the now *advisory* guidelines is constitutionally permissible. *People v Biddles*, __ Mich App __, __; __ NW2d __ (2016); slip op at 5-7, citing and quoting *Lockridge*, 498 Mich at 364-365, 389, 392 n 28. At the time of resentencing, the sentencing guidelines were advisory pursuant to *Lockridge*, 498 Mich at 364-365, 399, and the trial court was fully aware of *Lockridge* at resentencing, noting that it no longer needed to supply substantial and compelling reasons for a departure, see *id.* Accordingly, while most if not all of the OVs at issue required judicial fact-finding for purposes of scoring, which scores were not supported by admissions or the jury's verdict, the advisory nature of the guidelines renders defendant's constitutional challenge obsolete.

With respect to defendant's traditional evidentiary challenge of the OVs, "if the trial court clearly erred in finding that a preponderance of the evidence supported one or more of the OVs or otherwise erred in applying the facts to the OVs, *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), and if the scoring error resulted in an alteration of the minimum sentence range, he would be entitled to resentencing, *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006)." *Biddles*, __ Mich App at __; slip op at 4. We first turn our attention to OV 7, which, at the time of the offense and sentencing, directed a score of 50 points when "[a] victim was treated with sadism, torture, or excessive brutality, or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a).[5] In light of the severe nature of Tatro's injuries, the evidence that he was being beaten while unconscious, and the savagery exhibited by the blood splatter, the trial court did not clearly err in finding that a

---

[5] Pursuant to 2015 PA 137, made effective January 5, 2016, the day after defendant's resentencing, MCL 777.37(1)(a) now provides that a score of 50 points is proper when "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

preponderance of the evidence supported the assessment of 50 points for OV 7. Tatro was treated with, and defendant's conduct exhibited, at a minimum, excessive brutality.

Taking into consideration the assessment of 25 points for OV 3, MCL 777.33(1)(c) (physical injury to victim), which score is not challenged on appeal, the assessment of ten points for OV 6, as reduced by the court upon stipulation of the parties (see footnote 4 above), and our affirmance of the 50-point assessment for OV 7, defendant's total OV score would be 85 points, leaving him at OV level VI (75+ points), which is where he is currently placed. Thus, even if the remaining challenges regarding OVs 5, 8, 10, and 19 were successful, it would not alter the minimum guidelines range, making resentencing unnecessary. Regardless, there was adequate record evidence showing serious psychological injury to a member of Tatro's family, OV 5, MCL 777.35(1)(a) (mother's letter to court reflecting family's agony), showing asportation of Tatro to another place of greater danger, OV 8, MCL 777.38(1)(a) (movement of Tatro to a back bedroom to renew assault), showing exploitation of Tatro due to size and strength differences, intoxication, and unconsciousness, OV 10, MCL 777.40(1)(c), and showing interference or attempted interference with the administration of justice, OV 19, MCL 777.49(c) (defendant's failed efforts to thwart stranger's attempt to involve police and obtain help for Tatro). Reversal is unwarranted. And given our analysis, defendant's associated ineffective assistance claim also fails, as neither deficient performance nor prejudice has been established. *Carbin*, 463 Mich at 600.

Defendant finally argues that the trial court violated the United States and Michigan Constitutions by sentencing him to 10 to 15 years' imprisonment. The gist of defendant's appellate argument is that the trial court failed to consider a litany of alleged mitigating circumstances that reflected defendant's rehabilitative capacity.

In *Lockridge*, 498 Mich at 392, our Supreme Court held that "[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." The Supreme Court provided virtually no elaboration, and this Court in *People v Steanhouse*, 313 Mich App 1; __ NW2d __ (2015), undertook the task of construing the new "reasonableness" standard. The *Steanhouse* panel decided that the "principle of proportionality" test recognized in *People v Milbourn*, 435 Mich 630, 634-636; 461 NW2d 1 (1990), should govern the "reasonableness" analysis relative to departures, subject to an abuse of discretion standard of review. *Steanhouse*, 313 Mich App at 44-48. The principle of proportionality requires sentences to be proportionate to the seriousness of the circumstances surrounding the offense and to the nature of an offender's background. *Id.* at 45. In terms of a departure and proportionality, factors to consider include the seriousness of an offense, whether facts were adequately addressed in the guidelines, custodial misconduct by the offender, expressions of remorse, and the offender's potential for rehabilitation. *Id.* at 46. The Court in *Milbourn* indicated that mitigating and aggravating variables should be considered in examining proportionality. *Milbourn*, 435 Mich at 660-661.

Defendant briefly mentions *Lockridge*, makes no reference to *Steanhouse*, which had been released six months prior to the filing of defendant's appellate brief, and presents no meaningful discussion of the principle of proportionality, as he fails to acknowledge any aspects regarding the character and nature of the offense. Contrary to defendant's argument, the transcript of the resentencing hearing clearly showed that the trial court considered many

mitigating factors associated with defendant's personal background. Indeed, the trial court was fairly sympathetic to defendant's situation, it certainly was aware of defendant's nearly spotless criminal background, it agreed with defense counsel that defendant had the capacity to do good, and the court expressed its belief that defendant, in general, "was a very respectful young man."[6] The trial court, however, concluded that the brutal and incomprehensible nature of the offense, as reflected in part by the types of injuries incurred by Tatro and the young man's death, dictated the sentence imposed. Again, defendant steers clear of that prong of the proportionality test that requires contemplation of the seriousness of the offense. The trial judge noted that it would remember the case "until I take my last breath." Considering the record and the evidence of a truly horrific assault, we cannot find any abuse of discretion by the trial court in departing from the guidelines and imposing the ten-year minimum prison term. With respect to the departure and the extent of the departure, the sentence was reasonable, given that it was proportionate to the offense and the offender. Defendant's attendant claims of ineffective assistance of counsel likewise fail.

Affirmed.

/s/ Kurtis T. Wilder
/s/ William B. Murphy
/s/ Peter D. O'Connell

---

[6] Further, some of defendant's mitigation claims are not even supported by the record, such as the contention that the presentence investigation report (PSIR) suggested that defendant "has a serious mental disease or defect." Defendant devotes several pages to arguing that mental illness is a mitigating factor that must be considered. There is, however, nothing in the PSIR that can be construed as indicating or inferring that defendant has a mental disease or defect, let alone a serious one, nor does the record otherwise suggest that defendant suffers from a mental illness. Furthermore, defendant's reliance on his substance abuse history, which is discussed in the PSIR, is misplaced, as it hardly qualifies as a mitigating factor. Additionally, the trial court placed some reliance for the departure on its determination that the sentencing guidelines, and in particular the OVs, were woefully inadequate in addressing the offense, where defendant's total OV score was nearly double the amount needed to place him at the top OV level in the grid. Defendant is silent on this determination, and we see no basis to disturb it.