# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSHUA ALAN TOUGH,

Defendant-Appellant.

UNPUBLISHED
November 22, 2016

No. 328043
Presque Isle Circuit Court
LC No. 14-092890 - FC

Before: OWENS, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Defendant, Joshua Alan Tough, was convicted by a jury of first-degree felony murder with first-degree child abuse as the underlying felony, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2). The trial court sentenced him to 32 to 70 years' imprisonment for his felony murder conviction, and to 225 months to 30 years' imprisonment for his first-degree child abuse conviction. Defendant appeals by right, arguing that he is entitled to a new trial because the trial court declined to instruct the jury on second-degree child abuse, that the trial court erred in denying his request to set aside the jury's verdict and allow him to accept a previously offered plea bargain, and that he is entitled to resentencing because the trial court failed to adequately conduct a hearing as required under *Miller v Alabama*, 576 US __; 132 S Ct 2455, 2457; 183 L Ed 2d 407 (2012), and thereby failed to give him a proportionate sentence. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case involves the killing of a 24-day-old baby boy, AR. Defendant lived with AR's mother, Kirsten Richardson, at the home of Richardson's mother, Jenny Freel. Defendant, who was 17 years old when the baby was born, was not AR's biological father but he initially agreed to help raise the child. He sometimes referred to AR as "it" and "thing." Freel believed defendant was jealous of the time Richardson spent with AR.

On the night of April 3, 2014, Freel left to visit a sick friend. Only defendant, Richardson, and AR were home. At a certain point, AR began to cry and it appears that while Richardson was getting a bottle, defendant was left alone momentarily with AR, who stopped crying. Eventually Richardson returned to the bedroom where AR was in his swing, wearing fewer clothes, and with a large bruise on his face and dried blood under his nose. Richardson testified that AR was making a gagging noise, so she picked him up and began patting and rubbing his back, but she then noticed that he had stopped breathing and was turning blue.

-1-

Richardson testified that defendant tried to convince her not to call 911. After some difficulty finding a cell phone, defendant eventually called 911. AR was taken to an Alpena hospital and was then transferred to a hospital in Saginaw, where he was eventually pronounced dead.

Expert testimony at trial established that AR died from blunt force trauma to his head, which caused a large brain bleed. Testimony also indicated that AR had peritonitis, a spreading infection of the abdominal cavity that was caused by a perforation of the intestines days before, and which was consistent with bruising on AR indicating that the cause was blunt force trauma. AR's death was ruled a homicide because it was determined that his injuries could not have been caused by an accident or a fall, but rather required a large amount of purposeful force.

Defendant had five interviews with police during the investigation of AR's death. Each interview was recorded, and portions[1] of the audio recordings were played for the jury. Throughout the course of the five interviews, defendant changed his version of events multiple times. First, he claimed that he simply found AR bruised and not breathing, and had no idea what had caused his injuries. Thereafter, he claimed that he tripped while carrying AR but prevented AR from falling and did not cause him any harm. Next, defendant claimed that when he fell, he accidently caused AR to have whiplash, but that he did not believe the injury was serious. Finally, defendant claimed that he tripped backwards while picking AR up out of his crib and, when doing so, accidentally pushed AR away from his body in a throwing-like motion. The investigating police officer testified that defendant's final version of events was inconsistent with blood found in a location above AR's crib.

## II. ANALYSIS

## A. JURY INSTRUCTIONS

Defendant asserts that the trial court abused its discretion by denying his request for a jury instruction on second-degree child abuse arising from knowingly and intentionally committing an act likely to cause serious physical harm to the child. M Crim JI 17.20a; MCL 750.136b(3)(b). Defendant contends that the evidence indicating that he had acted intentionally but had not meant to harm AR supported giving the instruction. Defendant further contends that failure to give the instruction was not harmless because it precluded the jury from determining whether defendant had the requisite intent for first-degree child abuse. Had the trial court given the instruction, defendant argues, and the jury found that he acted knowingly and intentionally, but without the intent necessary for first-degree child abuse, the jury likely would have convicted him of second-degree child abuse. While second-degree child abuse is a felony, it does not serve as a predicate offense for felony murder. See MCL 750.316(1)(b). We find defendant's argument unpersuasive.

---

[1] The initial interview, conducted on the night AR was taken to the hospital, was played in its totality. The remaining interviews were redacted as necessary.

We review de novo issues of law arising from jury instructions. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). We review a trial court's determination regarding whether an instruction is applicable to the facts of a case for an abuse of discretion. *Id*. A trial court abuses its discretion if its decision falls outside the range of reasoned and principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30, 37 (2002). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Id*. The instant defendant bases his request for jury instructions on second-degree child abuse on the presumption that second-degree child abuse is a lesser included offense of first-degree child abuse. Under the Code of Criminal Procedure, when a defendant is charged with an offense that consists of different degrees, "the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment . . . ." MCL 768.32(1). "Inferior" in the statute refers to "the absence of an element that distinguishes the charged offense from the lesser offense." *People v Wilder*, 485 Mich 35, 41; 780 NW2d 265 (2010) (quotation marks and citations omitted). Thus, the trier of fact may find the defendant guilty of a lesser offense "if the lesser offense is necessarily included in the greater offense." *Id*. "[T]hat is, the offense must be committed as part of the greater offense insofar as it would be impossible to commit the greater offense without first committing the lesser offense." *People v Jones*, 497 Mich 155, 164-165; 860 NW2d 112 (2014). (quotation marks and citation omitted).

When dealing with degreed offenses that can be committed by alternative methods, the proper analysis to determine whether an inferior offense is included in the greater offense requires "a narrowly focused evaluation of the statutory elements at issue." *Wilder*, 485 Mich at 44. The trial court must examine the elements of the greater offense, as charged, to determine whether the alternative elements of the lesser crime are subsumed within the charged offense. *Id*. at 45. "Not all possible statutory alternative elements of the lesser offense need to be subsumed within the elements of the greater offense in order to conclude that the lesser offense is a necessarily included lesser offense." *Id*. at 44-45.

However, even if the trial court finds that a particular offense is necessarily included in the charged offense, it must still determine that "a rational view of the evidence would support [the instruction]." *Jones*, 497 at 165 (quotation marks and citation omitted; alteration in *Jones*). If a trial court errs in determining not to instruct the jury on a lesser included offense, reversal is required only if, when surveying the "entire cause," it is determined that failure to give the instruction is not harmless, as manifested by substantial evidence supporting the requested lesser included instruction sufficient to undermine the reliability of the verdict on the greater offense. *People v Cornell*, 466 Mich 335, 365; 646 NW2d 127 (2002).[2]

---

[2] Contrary to the many unpublished opinions of this Court citing *Cornell* as having been overruled by *People v Mendoza*, 468 Mich 527; 664 NW2d 685 (2003), nothing in *Mendoza*

-3-

Under MCL 750.136b(2), an individual is guilty of first-degree child abuse if he or she knowingly or intentionally causes serious physical or mental harm to a child. First-degree child abuse "requires the prosecution to establish, and the jury to be instructed that to convict it must find, not only that defendant intended to commit the act, but also that defendant intended to cause serious physical harm or knew that serious physical harm would be caused by her act." *People v Maynor*, 470 Mich 289, 291; 683 NW2d 565 (2004). Defendant does not challenge on appeal the trial court's instructions to the jury regarding first-degree child abuse.

Under MCL 750.136b(3), a person is guilty of second-degree child abuse if any of the following apply:

(a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

(b) The person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child regardless of whether harm results.

(c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results.

Defendant's trial counsel requested two jury instructions relevant to second-degree child abuse: M Crim JI 17.20 and M Crim JI 17.20a. Under M Crim JI 17.20, a jury may find a defendant guilty of second-degree child abuse if the defendant committed a reckless act that resulted in serious physical injury to a child. See also MCL 750.136b(3)(a). Under M Crim JI 17.20a, a jury may find a defendant guilty of second-degree child abuse if the defendant "knowingly or intentionally did an act likely to cause serious physical or mental harm" to a child, regardless of whether harm resulted. See also MCL 750.136b(3)(b). The trial court denied defendant's request for second-degree child abuse instructions because no evidence supported the claim that defendant had acted recklessly, and evidence from two medical experts indicated that AR's injuries were not the result of accidents. Thus, although the trial court explained its denial of defendant's request for a jury instruction for second-degree child abuse based on a reckless act theory, i.e., M Crim JI 17.20, it did not explain its refusal to give the instruction based on knowing and intentional acts, i.e., M Crim JI 17.20a. Nevertheless, we affirm the trial court's decision not to instruct the jury with regard to second-degree child abuse.

Assuming arguendo that second-degree child abuse based on a theory of knowingly or intentionally committing an act likely to cause serious physical or mental harm to a child is a lesser included offense of first-degree child abuse, a rational review of the evidence does not support giving the requested instruction. To be supported by a rational view of the evidence, a lesser included offense must be justified by the evidence. *People v Steele*, 429 Mich 13, 20; 412 NW2d 206 (1987), overruled in part on other grounds in *Cornell*, 466 Mich 335. In the instant case, however, defendant points to no acts committed by him that were knowing or intentional,

overrules *Cornell*, as a panel of this Court explained in *People v Burks*, 308 Mich App 256, 267 n 3; 864 NW2d 580 (2014), vacated in part on other grounds, 498 Mich 969 (2016).

and likely to cause serious physical harm to AR. On the contrary, defendant consistently maintained that, if he did anything that harmed AR, he did it accidently, i.e., by stumbling, tripping, or falling backwards. These are not acts committed knowingly or intentionally and, therefore, cannot support an instruction on second-degree child abuse under a theory of knowing or intentional acts.

Further, even if a rational view of the evidence did support instructing the jury on second-degree child abuse under the knowing or intentional act theory, substantial evidence did not support the requested instruction and, accordingly, reversal is not required. *Cornell*, 466 Mich at 365. As discussed above, nearly all of the evidence presented at trial suggested that defendant killed AR by intentionally throwing him into the wall or crib. Defendant's statements to police claiming that injuries to AR resulted from accidents were clearly inconsistent with the nature and severity of AR's injuries. Thus, taken as a whole, the evidence, including the nature of the injuries suffered by AR and defendant's inconsistent explanations, supported the greater offense, and there was no substantial evidence to support giving an instruction on second-degree child abuse committed through knowing or intentional acts. Consequently, even if the trial court had abused its discretion by denying defendant's request for M Crim JI 17.20a, the error does not undermine the reliability of the verdict and, therefore, does not require reversal. *Id*.

## B. PLEA BARGAIN

Prior to sentencing, defense counsel informed the court that he believed he had a conflict of interest because he had provided improper advice to defendant. He had advised defendant that he could face life in prison without the possibility of parole if convicted of felony murder, but failed to inform him that if the trial court decided not to sentence him to life, he would face a mandatory minimum sentence of 25 to 40 years.[3] Defendant had been offered a plea bargain that would have let him plead guilty to second-degree murder with a minimum sentence of 15 to 25 years and a maximum of 40 years. Despite knowing the risk of being sentenced to life in prison without the possibility of parole, defendant repeatedly rejected the plea offer.

New defense counsel was appointed and the trial court held an evidentiary hearing on whether defendant should be allowed to retroactively accept the above-referenced plea bargain. Defendant's newly appointed counsel argued that because defendant's attorney had not advised

---

[3] Pursuant to MCR 769.25(2), for certain enumerated homicide offenses, the statute allows the prosecuting attorney to file a motion seeking to sentence a juvenile offender to imprisonment for life without the possibility of parole. If the prosecuting attorney files such motion, the trial court must conduct a hearing on the motion as part of the sentencing process and consider various factors listed in *Miller v Alabama*, 576 US ___; 183 L Ed 2d 407; 132 S Ct 2455 (2012), and may consider other criteria relevant to its decision. MCL 769.25(6). If the court decides not to sentence the juvenile offender to life without the possibility of parole, the court "shall sentence the individual to a term of imprisonment for which the maximum term shall not be less than 60 years and the minimum term shall not be less than 25 years or more than 40 years." MCL 769.25(9).

defendant of the mandatory minimum sentence associated with his felony murder charge, defendant did not fully appreciate the ramifications of his decision to decline the plea offer, and if defendant had known, he would have accepted the plea bargain. The prosecution countered that defendant was fully advised that the trial court could sentence him to life without the possibility of parole if convicted of felony murder, yet he declined an offer to plead guilty to second-degree murder on at least three occasions, and maintained his innocence throughout the entirety of the trial. The trial court took testimony from defendant and his prior counsel to resolve the matter. Defendant testified that his attorney discussed the prosecution's plea offer with him and advised him that if he pleaded guilty to second-degree murder, the prosecution would drop the charges of first-degree child abuse and felony murder. He also testified that if he pleaded guilty to second-degree murder, the prosecution would seek a sentence of 15 to 40 years, and that if he was convicted of felony murder, he could potentially be sentenced to life in prison without the possibility of parole. However, he said that his attorney also advised him that because he was a minor at the time of the offense, the trial court could choose not to sentence him to life without the possibility of parole. Finally, defendant said that he did not take the offer because he thought that if he was convicted at trial he would receive no more time in prison than what was offered in the plea bargain, and that he would have accepted the plea offer if he had understood the minimum sentence applicable to the charged offense.

The attorney testified that he met with defendant approximately 20 times throughout the course of his representation and that the offer to plead guilty to second-degree murder was more or less on the table throughout the entirety of the proceedings, and so he discussed it with his client almost every time they met. He testified that defendant never admitted to knowingly or intentionally hurting AR, and that he maintained his innocence throughout the course of his representation. He further testified that he emphasized to defendant that if he rejected the offer and went to trial, there was a real possibility he would face life in prison without the possibility of parole. The trial court concluded that defendant's attorney was ineffective for failing to properly advise defendant of the mandatory minimum had a sentence of life without parole not been given, but that defendant could not establish a reasonable probability that he would have taken the plea offer had he been provided proper assistance of counsel, as he had refused the plea offer despite knowing he faced a potential life sentence.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. "[F]indings of fact are reviewed for clear error" whereas "[q]uestions of constitutional law are reviewed by this Court de novo." *Id*. We conclude find that the trial court did not err in denying defendant's request to set aside the jury verdict and allow him to accept the plea offer.

A defendant seeking relief for ineffective assistance in the context of improper advice during the plea bargaining process must meet the familiar two-pronged standard laid down in *Strickland v Washington*, 466 US 668, 104 S Ct 2052 (1984), by showing (1) " 'that counsel's representation fell below an objective standard of reasonableness,' and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), quoting *Lafler v Cooper*, 566 US __, __; 132 S Ct 1376, 1385; 182 L Ed 2d 398 (2012). In

demonstrating prejudice, the "defendant must show the outcome of the plea process would have been different with competent advice." *Douglas*, 496 Mich at 592, quoting *Lafler*, 566 US at __; 132 S Ct at 1384. That is,

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Lafler*, 566 US at __; 132 S Ct at 1385.]

Here, the trial court found, and all parties concede, that the attorney provided ineffective assistance of counsel by failing to advise defendant that if convicted of felony murder and not sentenced to life in prison without the possibility of parole, he would be subject to a mandatory minimum sentencing range of 25 to 40 years. Accordingly, the only question for review is whether the error was outcome determinative— that is, whether defendant would have accepted the offer but for the improper advice.

Based on the testimony presented to the trial court, it did not clearly err in finding that there was no reasonable probability that defendant would have accepted the plea offer. While defendant claims he believed he would receive no greater penalty by proceeding to trial than what was offered in the plea bargain, this alleged belief was not based on the advice of counsel or any source other than his own supposition. Defendant specifically testified that he was advised that if convicted of felony murder, there was "a very real possibility" that he could face life in prison without the possibility of parole. While defendant testified that he did not believe he would receive this sentence because he was a minor at the time of the offense, the attorney specifically testified that he advised defendant that a lesser sentence was only a possibility, not a certainty. Moreover, the attorney testified that defendant never considered the plea offer, was never willing to admit he caused AR's injuries, and maintained his innocence throughout the proceedings.

Because defendant understood that he could face life in prison without the possibility of parole if convicted of felony murder, and he rejected the plea offer despite this knowledge, the trial court did not clearly err in concluding that defendant would not have chosen to accept the plea offer if he had been informed of the lesser alternative potential of receiving a 25 to 40-year minimum sentence. Therefore, the trial court properly denied defendant's request to vacate the jury verdict and allow him to accept the plea offer retroactively.

## C. SENTENCING

Following the jury's verdict, the prosecution moved the trial court to sentence defendant to life in prison without the possibility of parole. In denying the motion summarily, the trial court determined that defendant's "immaturity mitigate[d] in his favor when it comes to issues like life without parole." The court then sentenced defendant to 32 to 70 years in prison for his felony murder conviction. Defendant now argues that he is entitled to resentencing because the trial court failed to conduct a hearing in order to consider the *Miller* factors. MCL 769.25(6).

Because the court never conducted such a hearing, defendant claims, it did not sufficiently consider the applicable sentencing factors of rehabilitativeness, protection of society, punishment of offender, and likelihood of repeating the offense. As a result, defendant argues, his sentence is disproportionate. Defendant did not raise the issue at sentencing, file a proper motion for resentencing, or file a proper motion for remand. Therefore, the issue is not preserved for appeal. MCL 769.34(10). Unpreserved sentencing errors are reviewed for plain error affecting substantial rights. *People v Callon*, 256 Mich App 312, 332; 662 NW2d 501 (2003).

In *Miller*, 132 S Ct at 2464, the United States Supreme Court held that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." As a result, the Michigan Legislature enacted MCL 769.25. Under that statute, if an offender is a minor at the time he commits felony murder, the general mandatory minimum sentence of life in prison without the possibility of parole does not automatically apply. MCL 769.25(2). Rather, if the prosecutor wants the sentence to be for life without parole, the prosecution must file a motion requesting that the trial court impose a sentence of life without parole. *Id.* If the prosecution files such a motion, the trial court must hold a hearing wherein it analyzes the factors laid out in *Miller* in order to determine whether the juvenile offender should be sentenced to life without parole. MCL 769.25(6).

Here, the trial court did not hold a hearing under MCL 769.25(6). Rather, it summarily denied the prosecution's motion and elected to sentence defendant to a term of years within the guidelines provided under MCL 769.25(9), which states:

> If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years.

Although the trial court did not conduct a hearing under MCL 769.25(6), the hearing was unnecessary because the court ruled in defendant's favor. That is, the trial court did not hold a full hearing on the issue because it determined not to sentence defendant to life in prison without parole. At most, the trial court's error was harmless, if not beneficial to defendant. Either way, resentencing is not warranted because the error did not affect a substantial right. *Callon*, 256 Mich App at 332.

Regarding proportionality, our Supreme Court recently held in *People v Lockridge*, 498 Mich 358, 391-92; 870 NW2d 502 (2015), that a trial court can depart from a guidelines minimum sentence range in which the offense variables have been scored on the basis of facts not admitted by the defendant or found beyond a reasonable doubt by the jury without providing substantial and compelling reasons. In addition, "a sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392. In *People v Steanhouse*, 313 Mich App 1, 44-48; 880 NW2d 29, this Court held that a sentencing departure is reasonable when it is proportional according to the factors laid out in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), including without limitation the seriousness of the offense, the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation.

Here, defendant argues that his sentence is not reasonable under *Lockridge* because it is not proportional according to the factors laid out in *Steanhouse*. However, defendant's argument is misguided. He was not sentenced under the guidelines and, coextensively, his sentence was not a departure from any guidelines range. The guidelines were not scored for his felony murder conviction. Rather, the trial court sentenced defendant to 32 to 70 years in prison, which is within the sentencing range laid out in MCL 769.25(9). Because the guidelines did not apply and there was no departure from the guidelines, *Lockridge* and *Steanhouse* are inapposite. Notably, defendant does not assert that the trial court relied on inaccurate information in determining his sentence. Moreover, "[l]egislatively mandated sentences are presumptively proportional and presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). As a result, we need not remand for resentencing.

Affirmed.

/s/ Donald S. Owens
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering